Lycoming Trust Company, Appellant, *v.* Allen.

Argued March 11, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*Miller Alanson Johnson,* and with him *Mortimer C. Rhone,* for appellant.

*Curtis C. Lesher,* and with him *Cloyd Steininger,* for appellee.

Opinion by Gawthrop, J., April 15, 1931:

Plaintiff Lycoming Trust Company claiming to be a holder in due course, brought suit against the maker of a $2,000 promissory note alleged to have been made by him to the order of Park Amusement Corporation, and bearing the following indorsements: "Park Amusement Corp., N. E. Watson, Treas.; James V. Bennett Co., by Sherman E. Bennett; West End Lbr. & Supply Co., Inc., C. E. Updegraff, Pres." It alleged that it acquired the note from the last indorser before maturity for a valuable consideration. In his affidavit of defense defendant admitted the execution of the note and its delivery to the payee, but averred that the Park Amusement Corporation never indorsed and delivered, or authorized the indorsement and delivery of, the note to the James V. Bennett Company; that N. E. Watson, who indorsed and delivered the note to the latter company, had no authority to make the indorsement and delivery; that Sherman E. Bennett had no authority

to indorse and deliver the note to the West End Lumber and Supply Company; that C. E. Updegraff had no authority to indorse and deliver the note to plaintiff. He also averred want of consideration and fraud in the procurement of the note by the Park Amusement Corporation, and that plaintiff had knowledge of the fraud when it took the note.

At the trial counsel for plaintiff began the presentation of his case by offering the note in evidence. An objection to the offer was sustained on the ground that the note was not admissible in evidence until plaintiff proved that the indorsements on the note had been made by persons having authority to make them. The first assignment of error is to this ruling.

Where the action is by the payee against the maker of a note, the plaintiff, ordinarily, has only to produce the instrument and prove the signature of the maker. But where the plaintiff is an indorsee and has derived his title by means of some intermediate transfer, the steps of this transfer become to some extent material to be proved. See Greenleaf on Evidence, Vol. 2, 16th Ed., Sec. 163. In so deciding in McCormick v. Trotter, 10 S. & R. 94, the Supreme Court said: "The bona fide holder of a note, payable to bearer, may recover on his possession, but where payable to order, he must prove the order, which can only be done by proving the endorsement by the payee...... Here, it was necessary to set out the indorsement, and to prove it; the averment of indorsement could not, as the court supposed, be stricken out without destroying the plaintiff's right of action. It was a material, necessary averment, the very foundation of the action, a necessary allegation, traversed by the defendant's plea of non-assumpsit, and without proof of which, the plaintiff had no standing in court." The rule in this State is in harmony with the general rule that where the genuineness of the indorsements through which plaintiff claims title are

properly put in issue, he must prove these indorsements. See 8 C. J. 999, 1010; Daniel on Negotiable Instruments, 6th Ed., Par. 812; Boles v. Harding, 201 Mass. 103; 87 N. E. 481; Marks v. Munson, 59 Colo. 440; 149 Pac. 440; Capitol Hill State Bank v. Rawlins Nat. Bank, 24 Wyo. 423; 160 Pac. 1170; Brannan's Negotiable Instrument Law Annotated, p. 297. So, if the indorsement is by a representative, his power to indorse must be proved: 8 C. J. 1011. Section 59 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, provides that "every holder is deemed, prima facie, to be a holder in due course." This presumption is declaratory of the existing law. By the terms of Section 52 of the act a holder in due course is one who takes the instrument before maturity, for value, in good faith, without notice of defenses. But it is necessary to distinguish between the necessity for plaintiff to prove the indorsement to show that he is the owner and entitled to sue, and the necessity for proving the indorsement to show that he occupies the position of a holder in due course. Where an issue is raised as to plaintiff's ownership of the instrument sued on by indorsement thereon by the payee to him, he has the burden of proving ownership before the instrument may be offered in evidence, although he need not at that time prove that he is a holder in due course, but may stand on the presumption that he is a holder in due course. See 8 C. J. 1011. In such circumstances proof of the fact of indorsement by the payee is indispensable: Collins v. Gilbert, 94 U. S. 753; 24 L. Ed. 170. As an issue had been raised by defendant as to the authority of Watson to make the indorsement for the payee of the note, it was necessary for plaintiff to introduce evidence of such authority before the note was admissible. For, until this appeared the note could not have been negotiated. See Section 30 Negotiable Instruments Act. This was just

as necessary as it would have been to prove the execution of the note if it had been denied. Therefore, it was not error to exclude the note until such proof had been produced. The first assignment of error is overruled.

Plaintiff offered to prove by its witness, N. E. Watson, who was treasurer of the Park Amusement Corporation, that it was the custom of the corporation in the prosecution of its commercial business to have its commercial paper indorsed by him as treasurer; that he indorsed the note as treasurer of the corporation; and that the corporation received the benefit of the note. The sustaining of objections to these offers is the subject of the second and third assignments of error. We think that the rulings were erroneous. Plaintiff had the right to show that Watson was the company's agent for indorsing commercial paper, and that the corporation received the benefit of the note. The evidence offered tended to prove that the corporation constituted its treasurer a general agent to make such indorsements; that it acquiesced in his acts in indorsing its commercial paper; and that it held him out to the public as having authority to do so. As stated in First National Bank v. Hotel Co., 226 Pa. 292, "the rule is well settled that if a corporation permit their treasurer to act as their general fiscal agent, and hold him out to the public as having the general authority implied from his official name and character, and by their silence and acquiescence suffer him to draw and accept drafts, and to indorse notes payable to the corporation, they are bound by his acts done within the scope of such implied authority." The evidence offered and excluded tended to prove such a holding out by the corporation, and this, together with the evidence that the corporation received the benefit from the note, was sufficient to support a finding by the jury that the treasurer had

authority to indorse the note. Defendant would be estopped from denying his agency: Hartzell v. Ebbvale Mining Co., 239 Pa. 602; Putnam v. Ensign Oil Co., 272 Pa. 301. When the court below wrote his opinion he evidently had come to the conclusion that the question whether or not the indorsement of the note by the treasurer was within the scope of his implied authority was for the jury. For, he stated that he would "lift the non-suit" if it were not for the fact that the indorsement of the note for the payee corporation by its treasurer was invalid and ineffective to bind the corporation, because it did not comply with the requirements of Section 2 of the Act of May 12, 1925, P. L. 615. This section provides, inter alia, that "any note......or other instrument of writing, or any assignment or indorsement thereof, executed or entered into between any corporation...... doing business within this Commonwealth and any other person......or corporation, when signed by the president or vice-president and secretary or treasurer of such corporation shall be deemed to have been properly executed for and in behalf of such corporation." Doubtless this statute was passed pursuant to the suggestion of Mr. Justice KEPHART in Putnam v. Ensign Oil Co., supra, that the legislature bring the law of Pennsylvania into harmony with the law of most of the other states, which is, in the words of the justice, that the by-laws of a corporation "operate merely as regulations among members of the corporation and have no effect upon contracts or other dealings with third persons, unless they have knowledge of the by-law." For, its first section provides that the by-laws of a corporation "shall operate merely as regulations among members of stockholders of the corporation and shall have no effect upon contracts or other dealings with other persons unless such persons shall have knowledge of such by-laws." Sec-

tion 2 does not limit the execution of a contract by a corporation to a particular form; does not provide that such a contract or writing shall be executed by any particular officer or officers. It seems clear, therefore, that the maxim expressio unius est exclusio alterius has no application in its construction. It does not mean that a written contract which has not been executed in behalf of a corporation by the president or vice-president and secretary or treasurer shall be held to have been improperly executed and not binding on the corporation. All that it provides is that when the president or vice-president and secretary or treasurer of a corporation sign a contract in its behalf, the execution shall be held a valid execution for and in behalf of the corporation. The statute extends rather than restricts the application of the principle that a corporation may be held for the acts of its agent in signing or indorsing commercial paper when it is done within the apparent. scope of his authority, or when the benefit of the proceeds of the paper has been received by the corporation. It does not sustain the ruling which is the subject of this assignment. As the indorsement of the payee was in blank plaintiff was not required to prove any of the subsequent indorsements.

But it offered to prove by its witness, C. E. Updegraff, who was president of the West End Lumber and Supply Company, and indorsed the note for that corporation, that he had authority to indorse it; that it was his general custom to indorse notes for the corporation; and that the officials of the corporation had never raised any question as to his authority to do so. The sustaining of an objection to this offer is challenged by the fourth assignment of error. Little need be added to what we have said in discussing the second and third assignments, to show why this assignment must be sustained. If the president of the corpo-

ration was in the habit of acting for the corporation with its knowledge and without objection in indorsing its commercial paper, actual authority might be inferred from such acts and the corporation would be bound by them. See Dougherty v. Hunter, 54 Pa. 380; Marine Bank v. Clements, 31 N. Y. 33, and Thompson on Corporations, Vol. 2, Sec. 1589. It is said by the author of the last mentioned work (Vol. 2, Sec. 1589) that the authorities are to the general effect that the president of a corporation has the implied power to indorse commercial paper of the corporation for the purpose of transferring title in the ordinary course of business, and that consequently such power need not be proved by a person claiming its exercise. In Weaver v. Henderson, 206 Ala. 529, 91 So. 313, it was held that under the Negotiable Instruments Law, proof of the signature of the president of the corporation who indorsed in the name of the corporation, is sufficient to establish plaintiff's title to the note as a purchaser in due course.

The fifth assignment is to the exclusion of plaintiff's offer to prove by the president of the plaintiff corporation at which the note was made payable, that it discounted the note for the West End Lumber and Supply Company, is the holder of the same, and that defendant did not pay on demand. That the evidence should have been received is so clear that no discussion is necessary.

The sixth assignment is to the exclusion of plaintiff's offer to prove, by the member of the partnership of Bennett & Company who indorsed the note for the partnership, that the partnership received a benefit from the transaction and used the note for partnership purposes. The ruling was wrong. A partner may negotiate notes received by the firm in the course of its business with the firm name and may even confess judgment against the firm for the amount of a firm

debt: Boyd v. Thompson & Coxe, 153 Pa. 78. See also Sec. 9 of the Uniform Partnership Act. of 1915, P. L. 18.

The seventh assignment complains of the direction of a verdict for defendant, and the eighth assignment is to the refusal of plaintiff's motion "to take off the non-suit." The trial judge seems to have regarded the directed verdict as an entry of a nonsuit, because his final order was that "the motion to lift the non-suit is refused." The reasons for sustaining these assignments appear in our discussion of the others.

The judgment is reversed and a new trial awarded.