CLAUDE S. VanSYCKEL, PLAINTIFF-RESPONDENT, v. EGG HARBOR COAL AND LUMBER COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted May 27, 1932—Decided October 17, 1932.

For the defendant-appellant, *S. Rusling Leap.*

For the plaintiff-respondent, *Walter S. Keown.*

The opinion of the court was delivered by

BODINE, J.   The defendant appeals from a judgment in favor of the plaintiff in an action on three promissory notes differing only in amount. The form and endorsement of the notes were precise with the following:

"$2,500          Egg Harbor City, N. J., December 5, 1929.

Four months after date we promise to pay to the order of Max Orocofsky at the Egg Harbor Commercial Bank, Egg Harbor City, N. J., $2,500 and 00 cts. dollars.

With defalcation for value received.

EGG HARBOR COAL & LUMBER CO.,

Arthur Mueller (signed), Pres.

Kate Mueller (signed), Pres.

No. 37220 Due Apr. 5.

(Reverse Side)

Max Orocofsky, by J. G., pr. att'y. (signed).

Without recourse

C. S. VanSyckel, att'y. (signed)."

The plaintiff testified that he purchased the notes before maturity from one Joseph Ginsberg, and that they had not been paid and that the amounts therein stated were due and owing.

The defendant's liability upon the notes appears to have been perfectly clear if the same were properly endorsed. The maker's signature was admitted. Section 1, Negotiable Instruments act (hereinafter referred to as N. I. L.). 3 *Comp. Stat., p.* 3734; *Penbrook Trust Co.* v. *Wiegand & Co.,* 100 *N. J. L.* 353.

The case is, however, barren of any proof of the genuineness of the signature of the payee which, we think, was an essential part of the plaintiff's case. At common law one, who sues upon a written contract, is obliged in the absence of admission to prove the signature of the defendant before the instrument can be received in evidence. *Robertson* v. *Burnstein,* 105 *N. J. L.* 375, 378. Similarly, the plaintiff, when not named in the contract, has always been required to show the right on which he stands. The notes in suit were not payable to bearer but were order notes and title did not pass until endorsed by the payee. We think the proof of the signature of the payee was a necessary part of the plaintiff's case, unless the fundamental rule of the common law has been changed by statute or the N. I. L. We have no statute changing the law of evidence in this respect. The N. I. L. was intended as a codification of the common law rules relating to negotiable instruments and is, for the most part, declaratory of the common law. *Brannan (5th ed.) N. I. L.* 651.

The learned trial judge took the view that the proofs showed that the plaintiff was the holder of the instrument and that under section 59 of the N. I. L. (3 *Comp. Stat., p.* 3741), the duty was cast upon the defendant to show a defect in title to overcome the presumption arising from possession. Section 59 of the act is as follows: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

This section of the statute appears under article 4, which is entitled "Rights of the Holder." A holder means the payee or endorsee of a bill or note who is in possession of it, or the bearer thereof. Section 191, N. I. L. There was no proof of the payee's signature, or the authority of the person who purported to act as agent to make the same. Section 19 provides: "The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose, and the authority of the agent may be established as in other cases of agency."

"Where the instrument is no longer in the possession of a party whose signature appears thereon a valid and intentional delivery by him is presumed until the contrary is proved." Section 16, N. I. L.

"When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." Section 23, N. I. L.

The court and jury had no evidence before them that the signature upon the back of the note was the signature of the payee, or that the agent purporting to sign the same was authorized so to do. It seems that such proof would be necessary, in view of sections 16, 19 and 23, before a presumption would arise of a valid and intentional delivery.

Since note obligations do not arise save by the signature of the maker, it would seem to equally follow that the signature of the payee by way of endorsement is the foundation of the rights of a holder in due course, subsequent to the payee. Upon the proof of the genuineness of the necessary signatures the holder's rights arise as specified in article 4 of the act, but in the absence of such proof there was nothing to indicate that the instruments in suit had been negotiated or that the person possessed of the physical paper had title thereto, or the right to the proceeds thereof. That proof of

the genuineness of the endorser's signature is essential, has long been recognized in banking practice. The ordinary bank check is never cleared through correspondent banks, except upon the written guaranty of all prior endorsements. See, also, sections 65 and 66, N. I. L.

A note payable to order is negotiated by the endorsement of the holder completed by delivery. Section 30, N. I. L. In this instance, the holder, prior to endorsement, was Max Orocofsky. Section 191, N. I. L. His signature was a sufficient endorsement. Section 31, N. I. L. There was, however, no proof of the authority of the person purporting to act as agent to affix the signature.

The case, therefore, failed because of the lack of proof of the validity of a necessary signature essential to the establishment of plaintiff's rights. The question seldom arises since banks and others engaged in the purchase or discount of paper do so on the faith of their customer's signature, well known and easily proved. Besides, the liability of the last endorser is firmly fixed by law. If a prior endorsement were not genuine there could be a recovery on the warranty of title.

The troublesome words in section 59 are: "But when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired title as holder in due course." Section 55 provides as follows: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." It is our view that section 59 should be read in the light of section 55 and the intervening sections, and when so done the whole matter is perfectly clear. Proof having been offered of the genuineness of the maker's and payee's signatures, the holder is deemed to be a holder in due course and the duty of proceeding to offer some proof of fraud or defect specified, in procuring essential signatures, is cast upon the party alleging it,

and until such proof is offered there is no duty upon the holder to prove that he or some person under whom he claims acquired the title as holder in due course.

The maker of a promissory note notified by the payee that the instrument had been lost or stolen, and that his signature did not appear thereon, or had been forged thereto, would certainly refuse payment. If the person possessed of such instrument could in an action brought thereon cast upon the maker the obligation of first offering evidence of the invalidity of the payee's signature, in order to rebut a presumption arising from mere possession of the paper it might follow that there would be a double recovery. Simply because the maker of such a note failed to defeat an action brought thereon would not discharge him from liability to his original creditor whose signature on the back of the note may have been forged. Section 23, N. I. L.

We do not think it was intended that the presumption should arise under section 59, N. I. L., without proof that the essential names on the front and back of an order instrument were the signatures of the named persons. In the absence of more specific language we cannot attribute a legislative purpose to so alter the rules of law and evidence, nor can we conceive that it was the legislative intention that the appearance of a name on the front or back of a note, either as maker or endorser, would take the burden of going forward from the person claiming by reason of the genuineness of such signature, and cast the burden upon another to first show that the same was not his signature, or the signature of a necessary endorser.

Section 59 of N. I. L. has no exact counterpart in the English Bills of Exchange act. However, under the Bills of Exchange act when fraud has been proved, the burden of proof is on the holder to prove both that value has been given and that it has been given in good faith without notice of fraud. *Talam* v. *Haslar,* 23 *Q. B. D.* 345; *Oakley* v. *Boulton,* 5 *T. L. R.* 60; *Harris* v. *Aldous,* 18 *New Zea. L. R.* 449.

The language of section 59, N. I. L., seems not to have

been regarded as changing in other jurisdictions the rule requiring proof of the validity of necessary signatures upon instruments purporting to be bills and notes. *Whitman* v. *Fournier*, 228 *Mass.* 93. Mr. Justice Loring there said: "This is an action on a promissory note signed by the defendant payable to Thomas Howard Company. It purported to be endorsed by the Thomas Howard Company by R. Howard, attorney. At the trial the plaintiff put the defendant upon the witness stand and asked him if the signature upon the face of the note was his signature and he testified that it was. The promissory note was then offered as an exhibit in the case and the plaintiff rested without introducing any evidence of the genuineness of the endorsement. (1) If the case had stopped there it is plain that the defendant would have been entitled to a verdict as matter of law for lack of evidence of an endorsement of the note by the payee to the plaintiff. The plaintiff has contended that the genuineness of the endorsement is presumed until the contrary is proved and in support of that contention he has relied upon *Wilbour* v. *Turner*, 5 *Pick.* 526; *Truesdell* v. *Thompson*, 12 *Metc.* 565; *Noxon* v. *DeWolf*, 10 *Gray* 343; *Rider* v. *Taintor*, 4 *Allen* 356. There is nothing in these cases that gives countenance to that contention. The first, second and fourth of these cases were cases where the note was payable to bearer. There was nothing in the other case (*Noxon* v. *DeWolf*, *supra*) which bears upon the question." For an exhaustive and comprehensive examination of the authorities see *Lycoming Trust Co.* v. *Allen*, 102 *Pa. Sup. Ct.* 184; 156 *Atl. Rep.* 707, also 8 *C. J.*, § 1316, *tit. "Bills and Notes."*

The judgment below is reversed, to the end that there may be a new trial.

*For affirmance*—THE CHANCELLOR, DONGES, BROGAN, VAN BUSKIRK, WELLS, JJ. 5.

*For reversal*—TRENCHARD, PARKER, LLOYD, CASE, BODINE, KAYS, DEAR, KERNEY, JJ. 8.