MIDLAND ACCEPTANCE CORP. *v.* SAUNDERS.

(Decided January 14, 1935.)

*Mr. Donald R. Calhoun,* for plaintiff in error.
*Messrs. Little & Little* and *Mr. Robert M. Hair,* for defendant in error.

MATTHEWS, J. This proceeding brings under review a judgment of affirmance by the Court of Common Pleas of Hamilton county of a judgment rendered by the Municipal Court of Cincinnati, in favor of the defendant in error, Paul R. Saunders, on his motion at the close of the evidence of plaintiff in error. The parties have occupied the same relative positions throughout this litigation. Midland Acceptance Corporation was the plaintiff and Paul R. Saunders was the defendant in the trial court. They will be referred to here by their titles in that court.

The plaintiff, alleged two causes of action—one, as indorsee of a negotiable note, of which the defendant was the maker, and which was payable to the order of Ohio Auto Radio Corporation—the other, as assignee of a chattel mortgage given by the defendant to secure the note upon which the first cause of action was based.

The defendant by answer admitted the execution and delivery of the note, and then alleged the facts of the original transaction, showing a failure of consideration in whole or in part. Defendant also alleged that the plaintiff had full knowledge of the agreement in accordance with which the note was executed and delivered, and that on the day the agreement and note were executed "the original agreement and note were delivered by Ohio Auto Radio Company to plaintiff."

There were other affirmative averments unnecessary to notice. In addition to these allegations, the answer included a denial of each and every allegation of plaintiff.

In support of its claim plaintiff, at the original hearing, offered evidence that C. J. Glenn brought the note and mortgage to it, that it gave him a check therefor, payable to Ohio Radio Corporation, and that the indorsement "Ohio Radio Corp., by C. J. Glenn, Mgr." was in the handwriting of C. J. Glenn. A witness testified that C. J. Glenn was "manager of Ohio Auto Radio Corporation," and that he was authorized to indorse notes. The note, check and chattel mortgage were introduced in evidence. There was, however, no evidence that the proceeds of the check reached the Ohio Auto Radio Corporation, unless the delivery of it to Glenn and the indorsement of its name are regarded as evidence.

With this evidence the plaintiff rested, and, on motion of the defendant for judgment, the court indicated that it would be sustained, the court being of the opinion that the authority of C. J. Glenn could only be proven by the minutes of the board of directors of the Ohio Auto Radio Corporation and the by-laws of the stockholders.

Thereafter, the plaintiff moved for leave to reopen the case for the purpose of introducing additional evidence. This motion was granted and the plaintiff thereupon offered the deposition of Jay L. Warren, who testified that he was vice-president of Ohio Auto Radio Corporation, and that C. J. Glenn was local manager of that corporation and fully authorized to indorse notes. The court sustained the objection to this evidence.

Still later, the plaintiff moved the court to reopen the case, with leave to introduce the deposition of James H. Worley, and a certified copy of certain

minutes of Ohio Auto Radio Corporation, which motion was overruled. The unopened deposition is attached to the bill of exceptions, as is also what purports to be a certified copy of the minutes of a meeting of the board of directors of the Ohio Auto Radio Corporation, antedating the alleged date of transfer of the note, fully authorizing C. J. Glenn to negotiate negotiable paper of that corporation.

With the record in this state, the trial court sustained the defendant's motion for judgment.

Two questions are presented by this record:

(1st) What proof, if any, other than the production of the note in court, with an indorsement on it, must a plaintiff introduce when he is suing as indorsee of a note payable to order?

(2nd) If additional evidence is required, did the plaintiff introduce any such evidence admissible under the law?

"The Negotiable Instruments Law," proposed by the National Conferences of State Boards of Commissioners for Promoting Uniformity of Legislation in 1896, has been enacted into law, with only slight variations in phraseology, in all the States and Territories. It was enacted by Ohio in 1902 and is now Sections 8106 to 8302 of our General Code. It was not a mere codification of existing Ohio law. One of its purposes was "to bring Ohio into harmony with the other states of the Union on so important a branch of the law as the relation of parties to commercial paper." *Rockfield* v. *First National Bank,* 77 Ohio St., 311, at 331, 83 N. E., 392, 14 L. R. A. (N. S.), 842. It is construed with that purpose in mind. *Id.*

Under that law does the production of a note payable to order with the name of the payee endorsed upon it establish a *prima facie* case without any proof of the genuineness of the indorsement, and, if it purports to have been the act of an agent, without any

proof of the authority of the person who assumed to act as agent? This question is answered by determining the meaning of Sections 16, 22, 23, 30, 49, 55, 59, and 191, of the Negotiable Instruments Law, which are Sections 8121, 8127, 8128, 8135, 8154, 8160, 8164 and 8295 of the General Code of Ohio.

The question of whether the plaintiff was obliged to prove the authority of the agent who had assumed to indorse the payee's name was under consideration in the recent case of *VanSyckel* v. *Egg Harbor Coal & Lumber Co.*, 109 N. J. L., 604, 162 A., 627, 85 A. L. R., 300, and after analyzing all relevant sections of the Negotiable Instruments Law the court at pages 607 and 608 said:

"The troublesome words in section 59 are: 'But when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired title as holder in due course.' Section 55 provides as follows: 'The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.' It is our view that section 59 should be read in the light of section 55 and the intervening sections, and when so done the whole matter is perfectly clear. Proof having been offered of the genuineness of the maker's and payee's signatures, the holder is deemed to be a holder in due course and the duty of proceeding to offer some proof of fraud or defect specified, in procuring essential signatures, is cast upon the party alleging it, and until such proof is offered there is no duty upon the holder to prove that

he or some person under whom he claims acquired the title as holder in due course.

"The maker of a promissory note notified by the payee that the instrument had been lost or stolen, and that his signature did not appear thereon, or had been forged thereto, would certainly refuse payment. If the person possessed of such instrument could in an action brought thereon cast upon the maker the obligation of first offering evidence of the invalidity of the payee's signature, in order to rebut a presumption arising from mere possession of the paper it might follow that there would be a double recovery. Simply because the maker of such a note failed to defeat an action brought thereon would not discharge him from liability to his original creditor whose signature on the back of the note may have been forged. Section 23, N. I. L.

"We do not think it was intended that the presumption should arise under section 59, N. I. L., without proof that the essential names on the front and back of an order instrument were the signatures of the named persons. In the absence of more specific language we cannot attribute a legislative purpose to so alter the rules of law and evidence, nor can we conceive that it was the legislative intention that the appearance of a name on the front or back of a note, either as maker or endorser, would take the burden of going forward from the person claiming by reason of the genuineness of such signature, and cast the burden upon another to first show that the same was not his signature, or the signature of a necessary endorser."

In the annotation to this case in 85 A. L. R., 304, the author collects the cases sustaining the principal case. Although judicial expressions may be found that could be construed to have a contrary meaning,

it is believed that none of such cases involved the identical question here discussed.

Having examined the cases on this subject, we are of the opinion that under the Negotiable Instruments Law, as construed by the weight of authority, the plaintiff had the burden of proving that Glenn was duly authorized to indorse this note.

As pointed out in *VanSyckel* v. *Egg Harbor Coal & Lumber Co.*, *supra*, under the law merchant a plaintiff was required to show title by proving the authenticity of all signatures necessary to create the chose and vest title in him. His mere production of the document was not sufficient. This was decided in *Capitol Hill State Bank* v. *Rawlins Nat. Bank*, 24 Wyo., 423, 160 P., 1171, 11 A. L. R., 937, and in an annotation to that case in 11 A. L. R., 952 *et seq.*, a great array of supporting authorities are collected.

*Wehrmann, Exrx.*, v. *Beech*, 7 C. C. (N. S.), 367, 18 C. D., 128, is not an authority to the contrary. There was no question in that case that the evidence showed that the plaintiff was the holder or owner. The question was whether he was a holder in due course. The fact that there was no lack of uniformity in the law on the subject confirms us in the belief that under the Negotiable Instruments Law a plaintiff must, when it is put in issue, prove the genuineness of the maker's signature, and when the instrument is payable to order must also prove the genuineness and authenticity of all indorsements necessary to vest title in him.

That brings us to the consideration of the evidence of such authority. The trial judge was of the opinion that the authority to indorse could be shown only by duly proven minutes of the board of directors or the by-laws of the stockholders. In this, we are of opinion, he erred. It is true that the authority must emanate from the board of directors, but their action need not be in any formal way. It may be by conduct,

acquiescence or ratification; or in any way in which a natural person may confer authority to do an act or ratify one already done. A corporation may be bound by the apparent authority of an agent, although the agent has not actual authority.

In 2 Fletcher Cyclopedia Corporations (Perm. Ed.), 250 and 251, Section 444, it is said:

" 'It is not the law that the authority of the agent or officer to act for a corporation can be proved only by the minutes of its board of directors or by a contract in writing.' If no minute books have been kept by the corporation, or if kept they have been lost, the authority of its officers or agents to do the acts in question may be shown by parol or by any other evidence that tends to prove what actually occurred at the directors' meeting, though undoubtedly the minutes are the best evidence, and must be produced if available. Existence of authority may be shown by proof of course of business, the knowledge of the board of directors of the corporation, and by presumptions of such knowledge. The agent's authority may also be shown by evidence that he does business for the corporation and on its behalf as agent with the knowledge and acquiescence of its directors or by their direction."

And, at page 255, it is further said:

"If a private corporation intentionally or negligently clothes its officers or agents with apparent power to perform acts for it, the corporation will be estopped to deny that such apparent authority is real, as to innocent third persons dealing in good faith with such officers or agents."

That agency for a corporation may be proven in the same way as agency for a natural person is clear. 10 Ohio Jurisprudence, 712 and 713, Section 526.

While authority to indorse notes will not ordinarily

be inferred from the designation of a manager, it may be from a course of business, and, of course, by express authority. There is evidence in the record, to which reference has already been made, of actual authority to indorse. The witnesses so testified. How it was conferred is not material.

The trial judge sustained the motion for judgment solely because in his view the evidence offered was incompetent, and not because it lacked probative value.

For these reasons the judgment is reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

HAMILTON, P. J., and ROSS, J., concur.