CAMPBELL, APPELLANT, *v.* HOSPITALITY MOTOR INNS, INC., APPELLEE.

[Cite as Campbell *v.* Hospitality Motor Inns, Inc. (1986),
24 Ohio St. 3d 54.]

(No. 85-807—Decided May 28, 1986.)

*Stewart & DeChant Co., L.P.A.,* and *Lawrence E. Stewart,* for appellant.

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Sheldon Berns* and *James J. Bartolozzi,* for appellee.

*Per Curiam.* The question presented is whether the appellee corporation may be bound on a contract neither expressly authorized nor expressly ratified by its board of directors. The answer to this question turns on well-settled principles of the law of agency.

Directors and officers are agents of the corporation and can bind their principal, the corporation, by their acts. *Kimball* v. *Kimball Bros., Inc.* (1944), 143 Ohio St. 500 [28 O.O. 425]. In *Kimball, supra,* at 506-507, this court also stated that "* * * a corporation * * * may become bound by acquiescing in and ratifying an unauthorized act done on its behalf by its agent."

It is uncontroverted that this employment agreement[1] was not ex-

---

[1] The "Agreement Concerning Employment," executed on August 4, 1978 by Cowell and appellant, provided as follows:

pressly approved at a formal meeting of the board of directors. Thus, appellee claims, the execution of the agreement by Cowell and appellant was

"RECITALS

"A. It is the desire of Employer to provide Executive with an incentive to remain and continue in the employment of Employer.

"B. It is the intent of Executive to continue in the employ of Employer performing services to the best of his ability.

"C. This limited Agreement concerning employment, is being entered into in view of the possible sale of Employer to new owners and the desire to provide a continuity of management for a limited period.

"NOW, THEREFORE, IT IS AGREED:

"1. *Initial Term.* The term of this Agreement shall commence on the date of this Agreement and continue until May 30, 1979 (herein 'the Initial Term'). The term of this Agreement shall be extended as provided in paragraph No. 2 hereof unless The Standard Oil Company determines not to sell its stock interest in Employer and Employer gives Executive not less than thirty (30) days written notice prior to the end of the Initial Term that this Agreement will expire at the end of the Initial Term.

"2. *Renewal Term.* Except as otherwise provided in paragraph No. 1, the term of this Agreement shall automatically be extended following the Initial Term for successive terms of six (6) months each (herein each six (6) month term shall be a 'Renewal Term') unless upon not less than thirty (30) days written notice prior to the end of any Renewal Term either party shall give notice that this Agreement shall no longer be subject to automatic extension in which case this Agreement shall terminate at the end of the Renewal Term following the Renewal Term in which such written notice was so given. The parties recognize that termination of this Agreement does not and shall not constitute a termination of the employment of Executive except as provided in paragraph 5 hereof.

"3. *Base Compensation.* Compensation shall be paid to Executive:

"a. during the Initial Term in accordance with Executive's present base salary compensation schedule; and

"b. during each Renewal Term in accordance with Executive's base salary compensation schedule then in effect.

"4. *Bonus.* Executive shall receive such bonus under the Employer's Executive Bonus Plan (herein the 'Plan') as Employer may determine in accordance with the terms and provisions of the Plan.

"5. *Termination of Employment by Executive.* Upon the termination of employment by Executive prior to the end of the Initial Term or any Renewal Term, other than by reason of action taken by Employer, the terms and provisions of this Agreement shall cease and Employer shall be obligated to pay Executive (or Executive's successor in interest) only unpaid compensation through the date of said termination of employment.

"6. *Termination of Employment by Employer.* If Employer terminates the employment of Executive, and the effective date of said termination occurs prior to the effective date of termination of this Agreement, the Employer shall pay to Executive an amount equal to the monthly current basic salary (not including any amount classified as bonus or incentive compensation) received by Executive during the last full calendar month of employment prior to said termination and said monthly amount shall be paid for a period of twelve (12) months with the first said monthly payment commencing on or about the tenth of the month following the month of said termination of employment and each of the eleven remaining monthly payments to be made on or about the same date of each succeeding month until full payment has been made.

"7. *Payroll Deductions.* All payments to Executive made pursuant to the provisions of paragraph No. 6 above shall take into account and there shall be deducted therefrom all required Federal, state and local withholding taxes on wages and FICA and other amounts required of Employer to withhold from payments to Executive."

unauthorized. Appellee also contends that, pursuant to R.C. Title 17, the only way this unauthorized agreement could have been subsequently ratified was by express formal action of the entire board. We do not agree. We find the better view to be set forth in *Piening* v. *Titus, Inc.* (1960), 113 Ohio App. 532, 536-537 [18 O.O.2d 174], which stated, "[t]he requirement that binding action must be taken at a formal meeting of directors is no longer as rigid as was once the case."

Ratification of an unauthorized contract by the directors of a corporation need not be express; it may also be implied by the board's conduct. *Kimball, supra,* at 506-507. This principle is ably explained in Fletcher's well-known treatise on private corporations:

"Ratification by directors may be by an express resolution or vote to that effect, *or it may be implied from adoption of the act, acceptance of benefits or acquiescence.*

"Ratification may be effected by a resolution or vote of the board of directors expressly ratifying previous acts either of corporate officers or agents; but *it is not necessary, ordinarily, to show a meeting and formal action by the board of directors, in order to establish a ratification.* As a general rule, *ratification of a contract or other act will be implied if the corporation, represented by the board of directors, who have knowledge of the facts, accepts and retains the benefits* of the contract or act, *or recognizes it as binding, or acquiesces in it. They may ratify by acquiescence, and need not act at a meeting regularly called, but may ratify without any formal action.* * * *" (Emphasis added.) 2A Fletcher, Cyclopedia of the Law of Private Corporations (1982) 444-445, Section 762. Accord *London & Lancashire Indemn. Co.* v. *Fairbanks Steam Shovel Co.* (1925), 112 Ohio St. 136; *City Trust & Sav. Bank* v. *Kennedy* (App. 1934), 17 Ohio Law Abs. 698; *Midland Acceptance Corp.* v. *Saunders* (1935), 50 Ohio App. 123 [3 O.O. 455].

Further, ratification may sometimes be implied where the corporation fails to repudiate an unauthorized contract within a reasonable period of time. *United States Rolling Stock Co.* v. *Atlantic & Great Western RR. Co.* (1878), 34 Ohio St. 450, 462 (" 'Where the principal is informed of what has been done, he must dissent, and give notice of it within a reasonable time; and if he does not, his assent and ratification will be presumed.' "). (Citation omitted.) Accord *Johndahl* v. *Columbus Trotting Assn.* (1956), 104 Ohio App. 118, 133 [4 O.O.2d 179]. See, also, *Fletcher, supra,* at Sections 766 and 769-772.

We therefore reaffirm the rule that an unauthorized contract entered into by a corporate officer or agent may be impliedly ratified by the corporate board of directors where the directors have actual knowledge of the facts and (1) accept and retain the benefits of the contract, (2) acquiesce in it, or (3) fail to repudiate the contract within a reasonable period of time.

In the instant case, we must now examine the record and determine whether there is sufficient evidence of ratification to preclude summary

judgment in favor of the appellee. It is axiomatic that summary judgment shall be rendered only when the movant has shown that there is no genuine issue as to any material fact. Civ. R. 56(C). Further, upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion. *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150, 151 [66 O.O.2d 311].

The affidavits and depositions relied on by appellant in opposing the motion for summary judgment contain evidence tending to show that the members of Hospitality's board of directors were aware that the employment agreement at issue was to be offered to appellant. These affidavits and depositions also indicate that the directors may have had actual knowledge that the agreement was then executed by appellant and an officer signing on behalf of the corporation. This evidence further demonstrates that, under the terms of the agreement, the corporation may have accepted and retained the benefits of appellant's services during the transition period of the sale to Hosmin, Inc. The actions of the corporation, represented by the board of directors, raise issues regarding its acquiescence in and approval of appellant's employment agreement. At the least, the appellant's evidence could be viewed as demonstrating corporate ratification by silence or failure to repudiate within a reasonable time after learning of the execution of the agreement.

Thus, summary judgment in favor of the appellee was improper. Appellant has presented evidence sufficient to raise a question of material fact as to whether appellee's board of directors impliedly ratified this "Agreement Concerning Employment" and consequently bound the corporation to honor it.

For the foregoing reasons, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN and WRIGHT, JJ., concur.

LOCHER, J., concurs in judgment only.

DOUGLAS, J., dissents.

CLIFFORD F. BROWN, J., concurring. I wholeheartedly endorse the well-reasoned analysis and sound result expressed in the majority opinion. I write separately to reinforce that it would be inequitable, in my view, to permit appellee corporation, having accepted and retained the benefits of an employment contract with appellant, to repudiate that contract simply

because corporate formalities were not technically followed in the consummation of the contract.

Both the majority and dissent ably recite 2A Fletcher, Cyclopedia of the Law of Private Corporations (1982), in support of their respective analyses. My concurrence with the majority's viewpoint rests on my belief that the facts as alleged, if proven, fall squarely within the long-recognized doctrine of ratification by acquiescence. As the name of the doctrine implies, acquiescence does not require any particular formality, but instead is implied from the facts and circumstances surrounding the transaction.

"Ratification, being purely a voluntary act upon the part of the principal, ordinarily requires some positive act. But the rule that when a principal has not disaffirmed an unauthorized act of his agent within a reasonable time after it came to his knowledge, he will be deemed to have acquiesced in such act, applies to corporate bodies as well as individuals. Ratification may be implied, or the corporation be held estopped to deny ratification, from acquiescence on the part of the corporation. When the officers or agents of a corporation exceed their powers in entering into contracts or doing other acts, the corporation, when it has knowledge thereof, must promptly disaffirm the contract or act and not allow the other party or third persons to act in the belief that it was authorized or has been ratified. If it acquiesces, with knowledge of the facts, or fails to disaffirm, a ratification will be implied, or else it will be estopped to deny a ratification. In other words, acquiescence with the full knowledge of the facts is equivalent to ratification of unauthorized acts of corporate officers or directors. After knowledge of the unauthorized contract, the corporation must repudiate it within a reasonable time or else consent and approval will be presumed to have been given to the officer's act or contract. * * *" 2A Fletcher, Cyclopedia of the Law of Private Corporations, *supra*, at 472-473, Section 769.

I agree with the majority's holding that summary judgment in favor of appellee herein was improper because the evidence presented was sufficient to raise questions of material fact. If the majority of the board of directors indeed had actual knowledge that an employment contract had been entered into with appellant, and the corporation accepted and retained the benefits of appellant's services rendered in accordance with that contract during the transition period, that scenario would clearly constitute ratification by acquiescence. To hold otherwise would unduly elevate form over substance, and would unnecessarily penalize appellant for his legitimate reliance on the validity of his contract with appellee.

Accordingly, I concur.

DOUGLAS, J., dissenting. I am compelled to dissent. The position taken by the majority in this case defies logic and any sense of fair play. Ratification by acquiescence, in which no formal action by the board of

directors is required, has never been meant to provide the means for corporate subterfuge.

At the onset, it should be noted that under the former General Corporation Act, in effect when this court decided *Kimball* v. *Kimball Bros., Inc.* (1944), 143 Ohio St. 500 [28 O.O. 425], corporate boards of directors were not authorized to act without a meeting. See G.C. 8623-1 (Am. S. B. No. 11, 112 Ohio Laws 9, and specifically G.C. 8623-46, at 29-30). Thus, in *Kimball,* unlike this case, this court did not decide the efficacy of the ratification by acquiescence of an unauthorized action taken by the board in a manner inconsistent with formalities required by applicable law. This court ruled at 507 only that where a board of directors *fails to function* and thereby acquiesces "in the conduct of the president, and secretary and treasurer, in the doing of any and all acts necessary to the conduct of the business," such board was subsequently *estopped* to deny the authority of these officers to execute the note in dispute.

The majority, in its recitation of Fletcher's treatise on private corporations conveniently fails to set forth one of the major limitations regarding the applicability of the doctrine of ratification. This limitation is as old as the doctrine itself.[2] The author notes at 2A Fletcher, Cyclopedia of the Law of Private Corporations (1982) 471, Section 768:

"If it is necessary that authority to do a particular act or enter into a particular contract shall be given in a certain form or mode, either by reason of a mandatory charter *or statutory provision,* or by reason of a common-law rule, ratification of such an act or contract must be in the prescribed form or mode. A ratification of an act, done by one assuming to be an agent, *relates back,* and is equivalent *to prior authority. When, therefore, the adoption of any particular form or mode is necessary to confer the authority in the first instance, there can be no valid ratification except in the same manner. * * *"* (Emphasis added.)

This "formal requisites" limitation is reiterated at 18B American Jurisprudence 2d (1985) 500-501, Corporations, Section 1649:

"As a general rule, ratification by a corporation need not be manifested by any vote or formal resolution of the corporation or board of directors or authenticated by the corporate seal; no higher degree of evidence is required to establish ratification on the part of a corporation than is required in showing an *antecedent authorization. * * ** However, a

---

[2] See *Dispatch Line of Packets* v. *Bellamy Mfg. Co.* (1841), 12 N.H. 205, 37 Amer. Dec. 203; *Meloy* v. *Central Natl. Bank* (1888), 18 D.C. 69; *Blood* v. *La Serena Land & Water Co.* (1896), 113 Cal. 221, 45 P. 252; *Lochwitz* v. *Pine Tree Mining & Milling Co.* (1910), 37 Utah 349, 108 P. 1128; *Marqusee* v. *Ins. Co. of North America* (C.A. 2, 1914), 211 F. 903; *Knapp* v. *Rochester Dog Protective Assn.* (1932), 235 App. Div. 436, 257 N.Y.Supp. 356; *Stammelman* v. *Interstate Co.* (1934), 112 N.J. Law 342, 170 A. 595; *John Paul Lumber Co.* v. *Agnew* (1954), 125 Cal. App. 2d 613, 270 P. 2d 1044; *Faber, Coe & Gregg, Inc.* v. *First Natl. Bank of Chicago* (1969), 107 Ill. App. 2d 204, 246 N.E. 2d 96; *Fiegelman* v. *Parmoff Corp.* (1969), 435 Pa. 461, 257 A. 2d 575; *Kaufman* v. *Henry* (Mo. App. 1975), 520 S.W. 2d 152; *Losinski* v. *American Dry Cleaning Co.* (Minn. 1979), 281 N.W. 2d 884.

ratification of an act, done by one assuming to be an agent, relates back, and is equivalent to, a prior authority; *where, therefore, the adoption of any particular form or mode is necessary to confer authority on the officer or agent in the first instance, there can be no valid ratification by the corporation of unauthorized acts except in the same manner.* * * * [Thus, for example then] a simple majority of the shareholders cannot ratify what the simple majority could not authorize in the first place *and thus evade a statutory requirement* of three-fourths majority. * * *" (Emphasis added.)

As aptly noted by the majority, "[i]t is uncontroverted that this employment agreement was not expressly approved at a formal meeting of the board of directors." R.C. 1701.54 clearly states that unless prohibited by the corporation's articles or regulations:

"* * * [A]ny action which may be authorized or taken at a meeting of * * * the directors * * * *may be authorized* or taken without a meeting *with the affirmative vote or approval of, and in a writing or writings signed by all * * * the directors, * * * which writing or writings shall be filed or entered upon the records of the corporation.* * * *" (Emphasis added.)

The plain meaning of this statutory provision is that the original authority to act without a meeting requires an affirmative vote of all of the directors and signed written documentation of any action taken in this manner. Therefore, ratification requires, and certainly should require, the same formalities. It is only logical that a mechanism be provided whereby directors can act on behalf of and in furtherance of a corporation's business without the necessity of a meeting. However, fair play dictates that any actions taken or decisions made in this informal way be documented so that any interested party can apprise itself of this information. This is clearly the goal of R.C. 1701.54 and pursuant to this statute, the subsequent ratification of unauthorized corporate acts by mere acquiescence is unlawful in Ohio.

The majority would allow the board of directors herein to contract surreptitiously and then to hide any evidence of their actions until some "convenient" future date. In the meantime, the new owners, who did not and could not have known of the liability they would incur with the purchase of this business, are then to have no recourse because by alternative, but equally clandestine means, the board has ratified its prior unauthorized act.[3] Although the contract in this case created a debt of only $75,000, the contract could just have easily been one guaranteeing employment for life, or creating indebtedness of one million dollars. Logic certainly requires a different result.

For the foregoing reasons, I would affirm the judgment of the court of appeals and, therefore, I must respectfully dissent as to the majority opinion herein.

---

[3] See, also, R.C. 1701.60 which, arguably, also applies.