OPINION
Real Estate Sales Zoning/Septic Representations SummaryJudgment
The Lake County Court of Common Pleas granted summary judgment to the answering plaintiff-appellee (Barna, Executor) and third party defendant ("Falvey") on the counterclaims of the defendants-appellants (Mr. and Mrs. Chris Paris). Replevin complaints by appellee against appellants remain extant, and the trial court articulated "no just reason for delay." Appellants assign three errors:
 "[1.] The court erred in granting summary judgment to [appellee] and [Falvey] as to the septic system by finding that no question of fact existed as to whether fraud existed and that caveat emptor applied and when in fact a question of fact remains and caveat emptor cannot be used as a defense.
 "[2.] The court erred in granting summary judgement in favor of [appellee] regarding her liability for the misrepresentation of zoning made by her agent, [Falvey].
 "[3.] The court erred in granting summary judgment in favor of [Falvey] regarding the representation of the zoning as it remains a question of fact whether [Falvey] acted with such utter disregard and recklessness as to infer knowledge."
 Appellee is the duly appointed executor of the estate of her deceased great uncle, Joseph Sallay ("Sallay"). Upon his death, Sallay owned a home located at 3651 Blackmore Road, Perry Township, Ohio. The property consisted of about 6.2 acres of land. After her uncle's death, appellee divided the land into three parcels and listed them each for sale. One of the parcels retained the Sallay residence ("Sallay parcel").
All three parcels were listed for sale through James Falvey and Falvey Realty, who were made third party defendants in this action. On the property disclosure form regarding the residence and nature of the sanitary sewer system servicing the property, appellee checked the box indicating "septic tank" and placed a question mark next to those words. Appellee also checked the box indicating "unknown."
On the Multiple Listing Printout ("MLS"), the Sallay parcel was described as having city water without any reference to a septic system. The MLS further stated that the adjoining parcels had septic, private water. The MLS also indicated that the Sallay parcel was zoned with an "A."
In May 1997, appellants viewed the Sallay parcel and offered to purchase it for $127,500. The purchase agreement executed by both parties contained an "inspection contingency," which permitted appellants to have professionals complete a septic inspection within a specified period of time after the agreement was signed. Consequently, appellants hired "Mr. Sewer Rooter" to complete an inspection of the septic system. The inspecting company was a company of their own choice. At the completion of the inspection, Mr. Sewer Rooter indicated that the septic system appeared to be good at the time of the inspection. Appellants then purchased the Sallay parcel.
Shortly after moving into the Sallay parcel, the sewer backed up in their home. Appellants hired Don Giffen ("Giffen") of Giffen Sewer Drain Cleaning to pump the septic tank. During the pumping of the septic tank, Giffen showed appellants that the leach field and the dry well were located on one of the adjoining parcels of the Sallay estate. At the time of that discovery, the parcel on which the septic leach lines were located was still vacant on the market for sale.
Upon discovering this problem, Timothy Cannon, the estate's attorney, was contacted for purposes of obtaining an easement on the adjoining property. Pursuant to appellants' request, an easement was granted "for the maintenance of an existing leach field." The easement was subsequently recorded at the Lake County Recorder's Office on October 30, 1997. Approximately two months after discovering the septic problem, appellee sold the remaining two parcels. The sale of the two parcels was made subject to the easement, which allowed the existing septic lines to remain. The owners of the two adjoining parcels operate a trucking business of the kind permitted in an I-2 (heavy industry) zone.
Although the MLS indicated that the Sallay property was zoned "A," the three parcels were in an area zoned I-2, allowing for residential use. Prior to purchasing the house, appellants consulted their buying agent, Charlotte King ("King"), who informed them that "A" meant the property was zoned agricultural.
On September 22, 1997, appellee filed a complaint in the Painesville Municipal Court against appellants for replevin, fraud, and conversion of certain items of personal property and motor vehicles belonging to the estate and remaining at the Sallay parcel. On January 13, 1998, appellants filed a counterclaim on the basis that the complaint sought monetary damages beyond the jurisdiction of that court. The counterclaim also alleged that appellee was negligent, breached her contract with them with respect to the septic system and the sale of the adjoining lot to the trucking company, and that she intentionally misled them with regard to the zoning classification. The matter was then certified to the Lake County Court of Common Pleas.
Appellants also named Falvey as new party defendants to the action, alleging negligence and misrepresentation with regard to the zoning classification, and negligence concerning representation of the septic system. Falvey then filed a complaint seeking indemnification against King and the company she worked for, Smythe Cramer.[1]
On March 22, 1999, appellee filed a Civ.R. 56 motion for summary judgment against appellants' counterclaims. In a judgment entry dated May 21, 1999, the trial court granted appellee's motion for summary judgment. In that judgment entry, the trial court also granted Falvey's motion for summary judgment. Appellee's complaint, however, remained pending after that judgment entry.
 I
In the first assignment of error, appellants aver that the trial court erred in granting summary judgment in favor of appellee because it erred in concluding that the doctrine of caveat emptor applied to preclude recovery. Appellants state that there was a question of fact concerning whether the leach field and dry wall being severed from the Sallay parcel was open to observation. Appellants further allege that the trial court erred in concluding that appellee did not commit fraud in representing the septic system to appellants. Indeed, appellants state that appellee acted so recklessly in representing the septic system and in selling off the adjoining land on which the septic system was located, that her actions amounted to fraud.
The standards to be applied in a summary judgment exercise were articulated in Osborne v. Lyles (1992), 63 Ohio St.3d 326, 327:
 "`Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, * * *. Moreover, `(* * *) upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion.' Campbell v. Hospitality Motor Inns, Inc. (1986) 24 Ohio St.3d 54, 58, * * *." (Parallel citations omitted.)
The doctrine of caveat emptor was discussed inLayman v. Binns (1988), 35 Ohio St.3d 176. In that opinion, the Supreme Court of Ohio stated:
 "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. * * *" (Emphasis sic.) Id. at paragraph one of the syllabus.
 In that case, the court further wrote that "[a] seller of realty is not obligated to reveal all that he or she knows. A duty falls upon the purchaser to make inquiry and examination." Id. at 177. The test is whether the defect was open to observation. Id. at 178.
Regarding the issue of fraud, the court noted that a vendor of real estate "has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection." Id. at 178. However, when a defect is readily observable or discoverable, and is not latent, then the non-disclosure of such defect does not constitute fraud absent an affirmative misrepresentation or a misstatement of a material fact. Id.
In addressing the question of when a defect is open to observation or reasonably discoverable, the Ninth District Court of Appeals held that the issue is ultimately whether the facts were such that a reasonably prudent person would be put on notice of a possible problem. Tipton v. Nuzum (1992), 84 Ohio App.3d 33,38. The appellate court further wrote:
 "Once alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises. Aware of a possible problem, the buyer has a duty to either to (1) make further inquiry of the owner, who is under a duty not to engage in fraud * * *, or (2) seek the advice of someone with sufficient knowledge to appraise the defect." Id.
 In the instant matter, appellants were put on notice of a potential defect with the septic system by virtue of the fact that on the property disclosure form, regarding the Sallay parcel and the nature of the sanitary sewer system servicing the property, appellee checked the box indicating "septic tank" and placed a question mark next to those two words. Appellee also checked the box indicating "unknown," with regard to the exact type of sewer system servicing the property. Based on those facts, appellants were then put on notice of a possible problem with the septic/sanitary sewer system. Indeed, from the representations made in the property disclosure form, appellee indicated that she did not know of the condition or type of sanitary system servicing the property.
Moreover, due to concerns over the status of the sanitary system, the purchase agreement signed by both parties contained an express provision entitled "inspection contingency," by which appellants were afforded the opportunity to have experts complete a septic inspection within a specified period of time. Additionally, due to their concerns about the sanitary system, appellants, in fact, hired their own professionals to inspect the system, which was described as being in good condition.
Under Nuzum, the property disclosure form, the MLS contradictory description, and the inspection contingency provision were sufficient to put a reasonably prudent person on notice of a possible problem with the status and or nature of the sanitary system. More importantly, the facts reveal that appellants were actually on notice of a potential problem due to the fact that they hired their own professionals to inspect the system. Thus, under Nuzum and Binns, the condition complained of was open to observation or discoverable upon reasonable inspection. Also, the record reveals that through the inspection contingency, appellants were not precluded in any way from examining the premises. Accordingly, the first two elements of the test articulated in Binns have been satisfied.
We next turn to a discussion concerning the third prong of the Binns test, in which the issue of fraud on the part of the vendor is considered. In Burr v. Bd. of Cty. Commrs. of StarkCty. (1986), 23 Ohio St.3d 69, the Ohio Supreme Court set forth the elements of fraud. In that opinion, the court held that fraud exists when there is (1) a material false representation or concealment of fact; (2) made falsely or knowing of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (3) with the intent of misleading another into relying upon it; (4) justifiable reliance upon the representation or concealment by the party claiming injury; and (5) injury resulting from the representation or concealment. Id. at paragraph two of the syllabus.
Based upon the record in this matter, we need only consider the first element. In reviewing the record, there is evidence that appellee checked the box marked "septic tank," placed a question mark next to those words, and also checked the box marked "unknown" with respect to the septic tank. These acts vitiate against finding that appellee made false representations or concealment regarding the septic system. Additionally, there has been no evidence presented that she made affirmative representations in contradiction to her markings on the property disclosure form. Thus, the first element of fraud has not been fulfilled. Consequently, construing the evidence most strongly in favor of appellant, reasonable minds only could conclude that no fraud existed. Therefore, appellant's first assignment of error is meritless.
 II
In their second assignment of error, appellants contend that the trial court erred in granting summary judgment against them with regard to zoning representations. Specifically, appellants assert that appellee made representations about zoning through Falvey. Since Falvey listed the zoning classification as "A," when the zoning was in fact I-2 (heavy industry) with residential permissible use, appellants state that appellee is ultimately liable for such representations, assuming that the misrepresentation was intentional. Indeed, appellants only raise the issue of intentional misrepresentation.
The doctrine of caveat emptor applies to the instant action. It applies to this assignment of error because the issue to be resolved concerns the zoning of land and the allegation that it induced appellants into purchasing the Sallay parcel. See Noth v.Wynn (1988), 59 Ohio App.3d 65, 67. Moreover, the thrust of appellants' claim is that the intentional misrepresentation of the Sallay parcel's zoning classification constituted fraud. Thus, caveat emptor will preclude appellant's misrepresentation claim unless fraud can be shown. Binns, 35 Ohio St.3d at paragraph one of the syllabus.
As discussed in addressing appellants' first assignment of error, fraud will exist when there has been (1) a material false representation or concealment of fact; (2) made falsely or knowing of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (3) with the intent of misleading another into relying upon it; (4) justifiable reliance upon the representation or concealment by the party claiming injury; and (5) injury resulting from the representation or concealment. Burr, 23 Ohio St.3d at paragraph two of the syllabus.
In the case sub judice, assuming that all other elements of fraud have been satisfied, and that Falvey is an agent of appellee, appellants' argument must fail because on the facts of this case, there was no justifiable reliance upon the representation of the zoning classification as a matter of law.
In Noth, the appellants purchased real estate. Wynn was the sellers' real estate agent. Wynn apparently informed the appellants at an open house that a certain portion of a lake behind the house was part of the property for sale, while the remainder was owned by the adjoining property. Shortly after the open house, the appellants purchased the residence. After the lake had turned green with algae, several months after the purchase, appellants attempted to treat the lake chemically, but were stopped by the other owner of the lake. After then checking records at the courthouse, the appellants discovered that they owned less of the lake than Wynn originally told them. They also found that the other lake owner maintained a restriction which gave them the right to drain the lake whenever desired. The appellants sued Wynn for fraudulent inducement.
On appeal, the First District Court of Appeals held that summary judgment against the appellants was proper because they could not satisfy the justifiable reliance element of an action for fraud. Noth, 59 Ohio App.3d at 67. The court stated that the appellants had no right to rely on any of the defendants' representations as a matter of law because the restriction and extent of lake ownership was made a public record and, therefore, open to discovery by both parties. Id.
In this case, at the time of the sale, appellants were advised by their own agent that the property zoned "A" was zoned agricultural. It was only after the sale that he became aware that the zoning was not "agriculture" and that it was, in fact, zoned I-2 (heavy industry). The only representation upon which Mr. and Mrs. Chris Paris relied was not conveyed to them by either appellee, or her agent, Falvey, but rather by their agent.
In Mr. Paris' affidavit he states, "When my wife and I checked the Perry Township Zoning for our parcel, we learned that our property and the parcels immediately north and next door were zoned Heavy Inudstry (I-2), contrary to what we had been led to believe and relied on by what was set forth in the Multiple Listing Service statements from our realtor, Charlotte King, and the general nature and character of the neighborhood before we purchased the property." Mrs. Paris states in her affidavit that, "I personally reviewed the Multiple Listing Service description provided by Charlotte King and questioned the zoning in that area. My husband and I were told by Ms. King that the "A" on the listing designated an agricultural zone. At no time did anyone tell us that the area was zoned Heavy Industry (I-2)."
The record is devoid of any testimonial assertion or evidence that Falvey incorrectly identified zoning on the MLS with either intent to defraud, or with wanton or reckless disregard of the truth. The zoning records are public records equally available to all of the parties in this case. Indeed, as in Noth, the facts were equally open to buyer and seller by virtue of the fact that either party could have consulted the zoning records. Additionally, the record reveals that although the property actually was zoned I-2 (heavy industry), residential uses were permitted and had been utilized, as evidenced by the fact that the house existed and had been lived in prior to the decedent's death.
Accordingly, reasonable minds could only conclude that there existed no justifiable reliance upon the representations by Falvey. Thus, appellants' second assignment of error is without merit.
 III
In the third assigned error, appellants argue that the summary judgment should not have been granted concerning Falvey's representation of the zoning classification, because there exists a question of fact as to whether Falvey acted with such utter disregard and recklessness as to infer knowledge of the falsity.
For the reasons articulated in addressing appellants' second assignment of error, this assigned error is not well-taken.
Each of the three assignments of error is overruled, the summary judgment of the Lake County Court of Common Pleas is affirmed, and the cause is remanded to said court for resolution of the remaining issues.
[1] Appellants originally named King and Smythe Cramer as new party defendants, but later dismissed them.