KOCH et al., Appellants,

v.

**OHIO DEPARTMENT OF NATURAL RESOURCES et al., Appellees.**

[Cite as *Koch v. Ohio Dept. of Natural Resources* (1994), 95 Ohio App.3d 193.]

Court of Appeals of Ohio,
Franklin County.

No. 93API12–1753.

Decided June 7, 1994.

---

*Smith & Lehrer Co., L.P.A.,* and *William H. Smith, Jr.,* for appellants.

*Lee Fisher,* Attorney General, and *Jeffrey R. Goldsmith,* Assistant Attorney General, for appellees.

---

CLOSE, Judge.

This is an appeal from a judgment of the Ohio Court of Claims dismissing a complaint for malicious prosecution following a trial on the merits.

Plaintiff-appellant, Dean Koch, is a commercial fisherman holding a seining permit for Lake Erie. Seining is a commercial fishing operation during which a large net is laid into a lake, then pulled into shore with the fish trapped inside. As the net is pulled, the fish are condensed into a small area and the "fishing" or "sorting" process begins. Because the seining net indiscriminately takes all fish as may be within its confines, there are restrictions and regulations as to the type of fish one may take by a seining net. One such restriction prohibits the taking of walleye. Specifically, R.C. 1533.63 requires that any walleye caught by commercial methods must be immediately released, with as little injury as possible, while the fishing device is being lifted, pulled or hauled from the water.

In April 1988, investigators Geno Barna ("Barna") and Merwin Chambers ("Chambers") of the Ohio Division of Wildlife secretly observed appellant's seining operation. They did so by using telescopes from an observation point some sixteen hundred feet to the northeast. From their position, Barna and Chambers observed appellant's operation for a period of several hours. When Barna and Chambers arrived, appellant's seining net was already in the lake but had not yet been brought in to trap the fish. A third investigator, William Booher ("Booher"), was stationed at the end of a road which led to the portion of the lake where appellant was seining. While unable to view appellant himself, Booher remained in contact with Barna and Chambers, who directly observed the seining.

During their observation, Barna and Chambers noted that neither appellant nor any of his employees attempted to free the trapped walleye from the net prior to the sorting of the fish. Nor did anyone attempt to aerate the net in an effort to reduce stress and injury to the trapped fish. Rather, immediately upon the netted fish being pulled in position for sorting, Barna and Chambers observed that a live truck was being filled with the fish. Barna and Chambers radioed Booher, alerting him to investigate the truck as it left the seining grounds.

Barna and Chambers next observed a man wearing waders go into the net carrying a bucket. The man filled the bucket with walleye and left the area. The investigators also observed several of appellant's crew members throwing walleye back towards shore, within and around the confines of the net, rather than releasing them to open water as mandated by statute. Appellant was on the scene of the operation while all of this took place.

Towards the end of the sorting process, Barna and Chambers witnessed another man appear at the seining grounds with a five-gallon bucket. Three members of the crew were seen twice filling the man's bucket with walleye retrieved by the seining operation. The man dumped the first bucket of fish into the trunk of his car, then had the bucket refilled and likewise placed the second bucket of fish in his car. Although sixteen hundred feet away, Barna and

Chambers could ascertain that walleye were in the bucket because of the distinctive tails protruding over the top. Again, Barna and Chambers radioed Booher, who stopped the vehicle as it left the seining area. Consistent with the observations of Barna and Chambers, Booher's examination of the trunk confirmed that it contained twenty-three walleye.

Because appellant held the commercial license for the seining operation at issue, he was ultimately issued two criminal complaints. In the first, appellant was charged with not immediately returning the walleye to open water with as little injury as possible while the net was being hauled. The second complaint charged appellant with the illegal taking of walleye by aid of commercial fishing gear.

Appellant entered a plea of not guilty. In preparation for the prosecutor's case against appellant, Barna and Chambers took photographs of the seining operation from the perspective of the surveillance spot they occupied on the date of their observation. Those photographs were taken a few weeks after the actual investigation to give the trial court perspective on the vantage point of the investigators.

As appellees' investigation continued, it was subsequently learned that appellant was also underreporting his fish catches. From this discovery, appellees obtained a search warrant of appellant's residence, for any business records relating to fish catches or purchases. As a result of the evidence seized in that search, appellant received three citations for inaccurate reporting of fish catches. Appellant ultimately pled guilty to one charge of inaccurate reporting. The two remaining charges were dismissed. At the same time, the two original criminal complaints became the subject of appellant's motion to suppress. That motion was sustained.

On appeal, the court of appeals reversed the suppression and ordered appellant to stand trial. However, the evidence as it related to that criminal charge was lost, resulting in the state's abandonment of the case. Additional facts will be developed as are necessary in the explanation of each assignment of error.

Appellant brings the following four assignments of error:

"1. The trial court erred in finding that a seining operation is concluded only once the seine gear is removed from the water and the stressed fish not taken have an opportunity to recover and swim away, when there was no supporting authority cited, and there is conflicting authority.

"2. The trial court erred in finding Defendants had sufficient probable cause to cause two charges under O.R.C. § 1533.63 to be issued against Plaintiff because the finding was based on innuendo and conjecture, not tangible proof.

"3. The trial court erred in finding that the lack of a favorable termination of all charges pending precludes a successful malicious prosecution claim.

"4. The trial court's finding that the Appellant did not meet his burden of proof on all the elements of a malicious prosecution claim, is against the manifest weight of the evidence, specifically when the court relied upon evidence not on the record."

■ By his first assignment of error, appellant takes issue with the trial court's factual finding that a seining operation is concluded only when the seine equipment is removed from the water and the stressed fish not taken have been released. Contrary to that finding, appellant proposes that seining is complete when the fishing equipment is brought to a resting position, but before sorting begins. However, for purposes of our review, this is a distinction without a difference.

R.C. 1533.63 addresses the taking of walleye by commercial means and requires that "[a]ll such fish caught or taken from a commercial fishing device shall be immediately released with as little injury as possible while the fishing device is being lifted, pulled, or hauled." The evidence is clear that, regardless of when the seining process is technically concluded, appellant violated the law. Based on the factual findings of the trial court, appellant violated R.C. 1533.63 in that he failed to release the trapped walleye as quickly as possible while the net was being lifted, pulled or hauled from the lake. For this reason, appellant's first assignment of error is overruled.

By his second assignment of error, appellant challenges the trial court's findings of probable cause as they relate to the two initial criminal charges brought against appellant. The issue presented here is not whether appellant was guilty of the charged offenses but, rather, whether there existed an honest and sincere belief in appellant's guilt at the time the charges were filed.

■ The existence of probable cause to support the filing of charges is an absolute defense to an action for malicious prosecution. *Kintner v. Cheeks* (1942), 71 Ohio App. 333, 26 O.O. 240, 49 N.E.2d 962. In the instant case, there were two distinct criminal proceedings instituted against appellant. Even if analyzed separately, it is obvious that sufficient credible evidence existed to support the belief that walleye were being illegally taken by appellant's commercial fishing net. Scienter, or guilty knowledge, is not an element of the charged offense. *State v. Borges* (1983), 10 Ohio App.3d 158, 10 OBR 211, 460 N.E.2d 1147. As such, it is of no consequence whether appellant knew of the actions of his crew. Appellant is strictly liable by virtue of the fact that he is the holder of the commercial license under which the walleye were illegally taken.

By observing appellant's crew load the live truck and buckets without first attempting to return the walleye, the department possessed evidence sufficiently strong to warrant the investigators' belief that R.C. 1533.63 had been violated.

Further, evidence existed that, while under his supervision, appellant's crew threw walleye in to shore instead of out to open water where the walleye would have a better chance of surviving. This evidence also created probable cause for the filing of the charges. Additionally, Booher confirmed the illegal taking of walleye when he investigated and found the fish in the trunk of a vehicle leaving the seining operation area. That finding certainly substantiated the actual observations of Barna and Chambers.

Appellant's second assignment of error is overruled.

By his third assignment of error, appellant takes issue with the trial court's preclusion of his malicious prosecution claim on the grounds that he did not receive a favorable termination of all underlying criminal charges. We are not willing to require in every case involving separate sets of charges that a nonfavorable determination as to one set necessarily applies to the other. However, as to the facts of this case, it is clear that, with regard to the underreporting of caught fish, there was a termination of the prosecution that was *not* in favor of the accused.

Consistent with our response to appellant's second assignment of error, the third assignment of error is likewise overruled.

Finally, by his fourth assignment of error, appellant challenges the finding of the trial court that he did not meet his burden of proof on all elements of his claim. Initially, we recognize that a judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. An appellate court may not substitute its judgment for that of the trial court where there exists, as in this case, competent, credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. The trial court's findings in this action are corroborated by competent, credible evidence and we will not, therefore, substitute our judgment for that of the trial court.

Appellant's fourth assignment of error is overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETREE and TYACK, JJ., concur.