[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Plaintiffs Donald and Teresa Copas appeal from an order of the trial court sustaining a motion for summary judgment filed by the defendants on the plaintiffs' claim for malicious prosecution. For the reasons that follow, the judgment of the trial court will be affirmed.
This matter originated with the filing of a complaint by Donald and Teresa Copas against Emro Marketing, Inc., Speedway #1131, and Regina Oross. In their complaint, the plaintiffs alleged that Oross, a manager of a Speedway store owned by Emro Marketing, maliciously and without reasonable or justifiable cause made a sworn complaint against Donald Copas, charging him with stealing six audio cassette tapes from the Speedway store that she managed. The plaintiffs further alleged that as a result of Oross' complaint, Donald Copas was arrested on a charge of petit theft and was required to appear in court. The plaintiffs alleged that the charge against Donald Copas was subsequently dismissed upon review by the Huber Heights prosecutor. In their complaint, the plaintiffs asserted claims for malicious prosecution, intentional infliction of emotional distress, and loss of consortium stemming from this incident.
The defendants subsequently filed a motion for summary judgment concerning the plaintiffs' malicious prosecution claim. The defendants argued that they merely reported suspicious activity to the police and did not actually institute any criminal proceeding against Donald Copas, that in any event probable cause existed to proceed against Mr. Copas, and that there was no evidence that any of the actions of the defendants were undertaken with malice. In response, the plaintiffs argued that from the evidence submitted in the context of the motion for summary judgment, genuine issues of material fact remained as to whether the defendants were actively instrumental in initiating or continuing the underlying prosecution, whether the defendants had probable cause to proceed against Mr. Copas, and whether the defendants' actions were undertaken with the requisite degree of malice necessary to support a claim for malicious prosecution.
The trial court sustained the defendants' motion for summary judgment on the malicious prosecution claim. The trial court concluded that sufficient evidence had been presented to find that the defendants procured the institution of criminal proceedings against Mr. Copas and that reasonable minds could differ as to whether there was probable cause to undertake the underlying criminal prosecution; however, the court concluded that no evidence had been presented that would indicate that the defendants acted with malice. As a result of the lack of evidence of malice, the court concluded that plaintiffs' malicious prosecution claim was necessarily precluded.
On the same day that the trial court rendered its decision concerning the malicious prosecution claim, the defendants filed a supplemental motion for summary judgment directed against the plaintiffs' intentional infliction of emotional distress claim. The trial court sustained that motion, finding that no evidence had been presented to support the elements necessary for a claim of intentional infliction of emotional distress. In addition, in view of summary judgment having been rendered in favor of the defendants on plaintiffs' malicious prosecution and intentional infliction of emotional distress claims, the court also dismissed the associated loss of consortium claim of Mrs. Copas.
The plaintiffs filed a timely notice of appeal of the trial court's order granting summary judgment to the defendants on plaintiffs' malicious prosecution claim. They now present a single assignment of error, stated as follows:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
The standards for determining a motion for summary judgment are well settled. As we have stated:
 Summary judgment is proper under Civ.R. 56 when the moving party establishes, first, that there is no genuine issue as to any material fact, second, that the moving party is entitled to judgment as a matter of law, and, third, that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 046, 47. In considering a motion for summary judgment, the trial court must also "look at the record in the light most favorable to the party opposing the motion", Campbell v. Hospitality Motor Inns, Inc. (1986), 24 Ohio St.3d 54, 58, 24 OBR 135, 138, 493 N.E.2d 239, 242, and . . . all proper inferences drawn from any of the facts and evidence must be construed in favor of the party opposing the motion. Hounshell v. Am. States Ins. Co. (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315. Our review of the granting of a motion for summary judgment by a trial court is de novo. Doner v. Snapp (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 43-44.
Didier v. Johns (1996), 114 Ohio App.3d 746, 750.
"The tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions." Criss v. SpringfieldTwp. (1990), 56 Ohio St.3d 82, 84. "The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Trussellv. General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus.
As a preliminary matter, before a defendant can be found liable on a claim for malicious prosecution, a plaintiff must demonstrate that the defendant instituted or continued the underlying criminal proceedings against the plaintiff. Generally, "a citizen who serves only as an informer of criminal activity is not regarded as having instituted the criminal proceedings."Robbins v. Fry (1991), 72 Ohio App.3d 360, 362; see also Archerv. Cachat (1956), 165 Ohio St. 286. "The protected status of informer can be lost, however, when the informer provides false information or the informer demonstrates a desire, direction, request or pressure for the initiation of criminal proceedings."Robbins v. Fry, supra, at 362. "The test of liability in such an action is: Was defendant actively instrumental in putting the law in force? To sustain the action, it must affirmatively appear as a part of the case of the party demanding damages that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion." Siegel v. The O. M. Scott Sons Co. (1943), 73 Ohio App. 347, 351.
The evidence presented here strongly indicates that the role of the defendants in initiating these proceedings was merely that of an informer. For example, in an affidavit filed in support of the defendants' motion for summary judgment, the investigating police officer stated that based upon his investigation, he issued and signed the complaint against Mr. Copas, that the complaint was not signed by Ms. Oross or any other representative of Speedway, and that he believed there was probable cause to suspect that Mr. Copas had violated R.C. 2913.02, the theft statute. However, Mr. Copas did state in his deposition that he was informed by the investigating police officer that Ms. Oross "wanted to press charges." Deposition of Donald M. Copas, Feb. 27, 1998, at 42. Thus, when construed in favor of the plaintiffs, the evidence reveals, albeit barely, a genuine issue of material fact as to the degree of the defendants' involvement in instituting the criminal proceeding against Mr. Copas.
As noted above, in order to prevail on the malicious prosecution claim, the plaintiffs must also demonstrate that the defendants acted with malice in instituting or continuing the underlying criminal prosecution and that there was a lack of probable cause with respect to that proceeding. Trussell v.General Motors Corp., supra. "In determining the want of probable cause, the defendant's conduct should be weighed in view of his situation and of the facts and circumstances which he knew or was reasonably chargeable with knowing at the time he made the criminal complaint." Melanowski v. Judy (1921), 102 Ohio St. 153, paragraph two of the syllabus. "The determinative issue is not whether a particular crime was actually committed, but whether there was a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense with which he was charged." Garza v. Clarion Hotel,Inc. (1997), 119 Ohio App.3d 478, 482; see also Koch v. OhioDepartment of Natural Resources (1994), 95 Ohio App.3d 193, 197
(the issue presented with respect to probable cause "is not whether appellant was guilty of the charged offenses but, rather, whether there existed an honest and sincere belief in appellant's guilt at the time the charges were filed.").
"The requirement of malice turns directly on the defendant's state of mind. Malice is the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent. * * * For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice. * * * The finder of fact, in evaluating a decision to prosecute, needs to know the basis upon which the decision was made. If the basis for prosecution cannot be shown, those who made the decision will appear to have acted with no basis — that is, maliciously." Criss v. Springfield Twp.,supra, at 84-85 (citations omitted).
Although malice and probable cause are distinct concepts, they nevertheless have relevance to each other in a malicious prosecution action. "In actions for malicious prosecution, while malice is an essential element, the want of probable cause is the real gist of the action. If want of probable cause be proven, the legal inference may be drawn that the proceedings were actuated by malice." Melanowski v. Judy, supra, at 155; see also Garza v.Clarion Hotel, Inc., supra, at 482.
"The issue of probable cause, which is ordinarily one of fact to be resolved at trial, may be determined as a matter of law upon a record that allows for only one reasonable conclusion. * * * However, when . . . the resolution of the issue of probable cause (and, by inference, the issue of malice) depends on whether the trier of fact believes the plaintiff or the defendant, summary disposition of a malicious prosecution claim is inappropriate."Evans v. Smith (1994), 97 Ohio App.3d 59, 69 (citations omitted).
Concerning probable cause, the trial court concluded that the materials before it supported a finding of probable cause. Nevertheless, the trial court then concluded, without explanation, that "when all inferences from the facts are viewed favorable to the plaintiff, reasonable minds could differ as to the existence of probable cause. Accordingly, this issue of probable cause is not a proper issue for summary judgment." Decision, Order and Entry Sustaining Defendants' Motion For Summary Judgment, May 26, 1998, at 5. The court further concluded, however, that there was no evidence that the defendants acted with malice and thus, sustained the defendants' motion for summary judgment. Plaintiffs' primary argument on appeal is that the trial court failed to recognize that malice may be inferred from a lack of probable cause. The plaintiffs argue that if a genuine issue of material fact exists with respect to the question of probable cause, then a genuine issue of material fact must also necessarily exist with respect to the question of malice.
Based upon our de novo review of the record, we believe that this is a case in which the question of probable cause can be determined as a matter of law. That is, even when the evidence is construed in favor of the plaintiffs, reasonable minds could only conclude from this record that the proceeding against Mr. Copas was based upon probable cause.
In support of their motion for summary judgment, the defendants submitted the affidavit of Regina Oross, the Speedway store manager. In her affidavit, Oross stated, inter alia, that she observed Copas removing audio cassette tapes from a display rack, but did not observe him returning the tapes to the position on the display rack from where they had been removed. Copas' actions caused Oross to become suspicious that Copas may have been intending to remove tapes from the display rack without paying for them. She stated that after Copas lingered around the display rack for quite some time, he took two cassette tapes to the register and began the process of paying for them and for some gasoline that he had pumped. Oross further stated that Copas then explained that he had left his wallet in his vehicle, whereupon he exited the store. He returned a short time later and paid for the two tapes and the gasoline and then left the store again. Oross stated in her affidavit that before Copas had entered the store, she had counted the audio cassette tapes on the rack. After Copas left the store, she counted the tapes again and discovered that in addition to the two tapes that Copas had purchased, additional tapes were missing. She then contacted the Huber Heights police department, who subsequently investigated the incident and issued a criminal citation to Mr. Copas.
The defendants also submitted an affidavit from Michael Noll, the investigating police officer. Noll stated in his affidavit that he reviewed a security videotape of Mr. Copas' activity within the store. Noll further stated that the videotape clearly depicted Copas selecting cassette tapes but never putting them back in the display rack. Noll also stated that based upon his investigation, he believed that there was probable cause to suspect that Copas had committed a violation of R.C. 2913.02, the theft statute.
Mr. Copas' deposition was also filed by the defendants with the trial court. Copas testified that other than the tapes he selected to purchase, he put the tapes that he looked at back in the display rack. Deposition of Donald M. Copas, Feb. 27, 1998, at 39-40. He also described viewing the surveillance videotape with Officer Noll. Copas testified that in viewing the videotape, he saw himself removing cassette tapes from the display rack and also saw himself putting those tapes back. Id., at 38. He further testified that the videotape "had me bending over, picking up a tape, looking at the name and then coming back down, picking up another tape, looking at it, coming back down and I looked at another tape." Id., at 38-39. He agreed that he looked at at least three tapes in this manner and perhaps more. Id. In addition, in contrast to his earlier testimony that the videotape showed him removing cassette tapes from the rack and putting them back, he testified as follows concerning a narrative contained in the police report of this incident:
 Q. All right. Read along with me. This officer was then assisted by Officer Sherman who also viewed the tape with this officer and you can clearly see Mr. Copas on the tape selecting tapes but never putting the tapes back in the rack.
 Does that accurately describe what you viewed on the videotape?
A. I really don't remember.
 Q. Okay. Would you have any reason to dispute the officer's statement if you can't remember?
A. No.
Id., at 49-50.
In the memorandum in opposition to defendants' motion for summary judgment, Copas submitted a copy of a witness statement that Oross had given to Officer Noll when Noll investigated the incident. Copas pointed out that in Oross' witness statement, she wrote "[w]hen I went and checked out the tape we saw him putting them in his pocket", but that Officer Noll, in his incident report, did not include a similar observation when describing his review of the videotape. In her witness statement, Oross also elaborated on her counting of the tapes that morning:
 No one else was looking or bought any of those tapes. I just scanned those tapes yesterday and arrange [sic] them so I would know if the [sic] were messed with. I looked at them again this morning and counted them. The [sic] were there until that guy came in.
 Copas also submitted an affidavit from his wife, Teresa Copas, who stated that on February 15, 1997, two days after the incident, she received a telephone call from Jeff Pascarella, an employee of Defendant Emro Marketing. She stated that Pascarella apologized to her and her family for what the family was put through because of the criminal charge against her husband. Mrs. Copas also stated that Pascarella indicated that as far as he was concerned, there were no charges against her husband and that he would speak to Oross and the Huber Heights Police Department concerning the dismissal of the charge. Mrs. Copas also stated that Pascarella told her that he would contact her within the week informing her of the status of the charge, but that he failed to do so and did not return any of her telephone calls.
From the evidence presented, we believe that reasonable minds can only conclude that the defendants proceeded against Mr. Copas on the basis of probable cause. Based upon an inventory she conducted both before and after Copas' visit to the store, Oross determined that additional cassette tapes in excess of the two purchased by Copas were missing from the display rack. Although Oross did not confirm in her affidavit that she actually saw Copas put the tapes in his pocket as she had written in her witness statement, she did state in her affidavit that she observed Copas remove cassette tapes from the display rack and not return them to the position from where they had been removed. Moreover, the investigating police officer confirmed that the surveillance videotape showed Copas selecting cassette tapes from the display rack and never putting them back. Although Copas initially testified in his deposition that the videotape showed him returning cassette tapes to the display rack, he later testified to a lack of memory as to what the surveillance videotape showed regarding his return of tapes to the display rack and conceded that he had no reason to dispute Officer Noll's interpretaion of the videotape. Copas also presented no evidence that in any way contradicted Oross' testimony concerning her inventory of the cassette tapes.
Although the evidence may present a question of fact as to whether Mr. Copas actually took the cassette tapes without paying for them, that question is not material to the determination of probable cause. Mr. Copas' guilt or innocence is not at issue. Instead, as discussed above, the issue as to probable cause is "whether there was a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense with which he was charged." Garza v. Clarion Hotel,Inc., supra, at 482. In making that determination, "the defendant's conduct must be weighed in view of the facts and circumstances that the defendant knew or should have known at the time of the instigation of the criminal proceedings." Id. The evidence presented establishes that the defendants had reasonable grounds to suspect that Mr. Copas had taken some tapes from the display rack without paying for them. There is no evidence that the interpretation placed upon the videotape by the defendants was unreasonable, nor is there any evidence that the defendants did not honestly and sincerely believe in Mr. Copas' guilt at the time that the charges were filed. See Koch v. Ohio Department ofNatural Resources, supra, at 197. The defendants may well have been mistaken in their belief; however, to the extent that the defendants played a role in instituting criminal proceedings against Mr. Copas, it cannot be said on this record that they were without probable cause to do so.
In the proceedings below, the plaintiffs also contended, based upon the Pascarella telephone call, that there was a genuine issue of material fact as to whether the defendants continued the criminal prosecution of Copas after having acquired knowledge that the charge was not well founded. However, it is undisputed that the charge against Mr. Copas was dismissed at a pretrial conference in the underlying criminal action. According to plaintiffs' complaint, that conference occurred on March 27, 1997, just six weeks after the criminal citation was issued to Mr. Copas. There is no evidence that the defendants opposed the dismissal, or demonstrated any desire that the proceeding against Mr. Copas continue, or took any steps to pressure the prosecutor to continue to pursue the matter, or were in any manner actively instrumental in preserving the charge against Copas while it remained pending. Thus, plaintiffs' contention that the defendants continued the prosecution after allegedly having acquired knowledge that the charge was not well founded is simply not demonstrated by the record.
Finally, we also agree with the trial court's conclusion that reasonable minds can only conclude from the evidence presented that the defendants' actions were not undertaken with any malice toward Mr. Copas. Even if the defendants were mistaken in their belief concerning Mr. Copas' alleged theft of the cassette tapes, there is simply no evidence that the defendants' actions were motivated by an improper purpose or by any purpose other than the legitimate interest of bringing an offender to justice. See Crissv. Springfield Twp., supra.
Because reasonable minds could only conclude from the evidence presented that the defendants' actions were based upon probable cause and not motivated by malice, the plaintiffs' malicious prosecution claim necessarily fails. Thus, the trial court did not err in granting summary judgment to the defendants on that claim.
The plaintiffs' sole assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
John A. Herndon
L. Michael Bly
Hon. James J. Gilvary