LITTON, APPELLEE, *v.* GEISLER ET AL., APPELLANTS.

(No. 736—Decided January 5, 1945.)

*Messrs. Johnson, Jones, Jenkins & Jefferys* and *Mr. A. J. Layne,* for appellee.

*Mr. John L. Smith* and *Messrs. Pratt & Crowe,* for appellants.

METCALF, J.   On June 1, 1928, defendants Jean H. Remy and her husband, Charles N. Remy, executed and delivered to O. A. Sears, now deceased, a leasehold estate for oil and gas purposes "for a term of ten years and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon." Among other provisions the lease stipulated that lessee was to pay lessors "for the product of each gas well from the time and while gas is marketed an annual rental of $300 payable annually." Lessors were to have the use of gas for heat and light in one dwelling house on the land leased at their own risk and their cost for laying the line.

In the year 1932 a well was drilled which produced gas, but because of a lack of market no gas was ever

sold from this well up to and including the present time. In the meantime, by arrangement between lessors and lessee, lessors were permitted to connect additional residences to this well and to use gas therefrom until there are now five different homes being furnished heat and light therefrom.

Upon the death of O. A. Sears, the original lessee, this leasehold estate was, by the next of kin, conveyed to the defendant William J. Geisler. Previous to this the leasehold estate had been conveyed back and forth between a corporation and the original lessee, which is of no consequence insofar as the disposition of the question before this court is concerned.

Subsequent to the death of Sears, lessors sold and conveyed the land upon which the well is located, reserving their interest in the gas well. Following this the Remys sold and conveyed to the plaintiff, Clint Litton, all their gas rights in this well and he in turn brought this action against defendant, Geisler, to quiet title and have the original lease declared null and void and cancelled of record, he claiming the entire working interest as well as the royalty on the theory that the original lease had expired. The defendants Remys, on their own motion, became parties defendants asking a reformation of their deed of conveyance to the plaintiff to show only the royalty interest to be conveyed thereby and subject to the original lease to Sears.

From the pleadings and the evidence the sole and only question presented in this appeal on questions of law and fact is whether the well in question has been and is producing gas in paying quantities. The answer to the question depends upon the intention of the Remys and Sears, and their successors in title, as ascertained from the facts and circumstances surrounding this case. *Herrington* v. *Wood,* 6 C. C., 326, 3 C. D., 475.

The evidence discloses that due to a lack of market all parties were satisfied to let the well stand until such time as a market could be obtained, and during this interval the Remys were furnished, in lieu of the $300 per annum that they would have been entitled to had the gas been marketed, sufficient gas to heat and light additional homes over and above the one residence provided for in the lease. No question was ever raised by either lessors or lessee that the well was not producing in paying quantities. The lessee had expended approximately $8,000 in the drilling of the well. The testimony indicates that when a market is found the well will produce from $18,000 to $20,000 in proceeds. That both lessors and lessee were benefited by this arrangement is clear because it saved the well for lessee until such time as he could market the gas and at the same time the evidence indicates that lessors were receiving, in lieu of the $300 per annum in cash, at least that much from the benefit of the additional service.

In the case of *Union Gas & Oil Co.* v. *Adkins* (1922, C. C. A., 6), 278 F., 854, the court, in a well considered opinion, in discussing the right of lessee to determine whether oil or gas is produced in paying quantities, said:

"There is some force in this contention insofar as it applies to gas wells, where the contract provides that the lessor shall receive a fixed annual rental for each gas well, and the lessee is ready and willing to pay that rental. In such case the landowner receives the same revenue from the operation of his land as he would receive if the gas well were in fact a paying one to the lessee."

In the instant case it has made no appreciable pecuniary difference to lessors that the gas has not been marketed. See, also, *Ohio Oil Co.* v. *McCrory*, 14 C. C., 304, 7 C. D., 344. It is rather universally held that

acceptance of rents or royalties under an oil and gas lease such as the one here under consideration is a waiver of forfeiture for breach of any covenant or condition for which such rents or royalties are paid. See 80 A. L. R., 461, annotation.

The original parties to this lease considered the gas produced of sufficient importance as to its paying quantity, that after the quantity produced was fully ascertained they caused pipe lines to be laid to the various homes served. Someone paid the cost of this extra service and this would hardly have been done if the well was not producing in paying quantities. This service satisfied the lessors and surely they are estopped from maintaining that the well has not produced and is not producing in paying quantities, or from complaining that no gas has ever been marketed therefrom, and the record discloses that they do not so claim or complain. Plaintiff's claim or title can rise no higher than that of the Remys. He is bound by the facts and circumstances surrounding the operation of this well during all of these years whereby his predecessors in title have been benefited by the production of the well. Neither can plaintiff usurp the prerogative of lessee and claim the well does not produce in quantities sufficient to warrant lessee in the operation thereof. It is held in *Zeller* v. *Book* (1905), 7 C. C. (N. S.), 429, 18 C. D., 119, that the fact it is questionable whether oil wells on land held under a lease operative only so long as oil or gas should be found in paying quantities will ever yield a reasonable profit on the investment is not sufficient ground for vacating the lease; in the absence of fraud, the lessee is the sole judge of this question, and as long as he can make a profit therefrom he will be permitted to do so. The mere fact that a lessee under such a lease has failed to operate the wells for some time, will not be ground for vacating such lease, where such lessee

shows good and sufficient reason why it has been impracticable for him to do so.

The Supreme Court of Oklahoma in the case of *Hennessy* v. *Junction Oil & Gas Co.*, 75 Okla., 220, 182 P., 666, held:

"The lessee, acting in good faith and upon his honest judgment, not an arbitrary judgment, or one springing from an ulterior purpose to secure an unfair advantage of the lessor, is to determine whether or not the well brought in produces gas in quantities large enough to transport."

In the case of *Barbour, Stedman & Co.* v. *Tompkins*, 81 W. Va., 116, 93 S. E., 1038, the court held:

"Under an oil and gas lease for the term of five years and as long thereafter as either mineral is produced from the land in paying quantities, the production required to effectuate such extension, in the absence of equitable circumstances varying the rule, is that quantity which will bring a reasonable pecuniary return in excess of the cost of production, regardless of any particular amount of profit derivable from the operation of the well.

"The lessor can not terminate the lease merely because he thinks the quantity of gas discovered within the five year period is not sufficient to constitute a paying well, where the operator, reasonably and in good faith, claims it is such a well and is willing to pay the rental stipulated therefor. His judgment, when *bona fide,* is entitled to great weight in determining whether the gas is in fact produced in paying quantities."

The *Hennessy* and *Barbour cases* just cited are quoted with approval by the Court of Appeals of the Seventh Appellate District of Ohio in the case of *Weisant* v. *Follett, infra.*

It was further held in the case of *Texas Pacific Coal & Oil Co.* v. *Bruce* (1921, Texas Civ. App.), 233 S. W., 535, that a stipulation in a gas and oil lease that the

lease shall continue so long as oil or gas is found in paying quantities is a stipulation for the benefit of the lessee, and the lessee may, in good faith, exercise his judgment as to whether he will continue operation or abandon the lease, and fraud in the exercise of this determination will not be presumed, but must be alleged and proved.

The prevailing rule seems to be that the phrase "paying quantities" is to be construed from the standpoint of the lessee, and by his judgment if exercised in good faith. The burden is upon plaintiff in this case to prove that the lessee has forfeited the lease because of failure to produce gas in paying quantities; and in the absence of indication of bad faith or selfish personal motive, the experience, interest and judgment of the lessee herein, under all the surrounding circumstances, are controlling as against the claim of plaintiff. See *Weisant* v. *Follett,* 17 Ohio App., 371.

The evidence in this case clearly shows that the lease here under consideration has never expired by the terms thereof; nor is there any element of forfeiture established. Under such circumstances, plaintiff's claim that any attempted renewal of this lease is void because it does not comply with the statute of frauds is untenable. No claim of bad faith or fraud is made by plaintiff and under the testimony could not be so claimed. Plaintiff was in possession of all the facts and circumstances surrounding the operation of this well prior to the purchase of the interest of the Remys by him and he is not in a position to claim an equitable injustice.

Under the terms of the lease, the evidence and the law this court finds in favor of the defendants and a decree is rendered accordingly.

*Decree accordingly.*

McCurdy, P. J., and Gillen, J., concur.