[Cite as *Harding v. Viking Internatl. Resources Co., Inc.*, 2013-Ohio-5236.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| JACK HARDING, et al., | : | |
| | : | |
| Plaintiffs-Appellees, | : | Case No. 13CA13 |
| | : | |
| vs. | : | |
| | : | |
| VIKING INTERNATIONAL | : | <u>DECISION AND JUDGMENT</u> |
| RESOURCES COMPANY, INC., | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | **Released: 11/18/13** |

_____
<u>APPEARANCES:</u>

James S. Huggins and Daniel P. Corcoran, Theisen Brock, LPA., Marietta, Ohio, for Appellant.

James J. Hughes, III, Jennifer A. Flint, Flite H. Freimann, and Daniel E. Gerken, Bricker & Eckler LLP, Columbus, Ohio, for Appellees.

_____

McFarland, P.J.

{¶ 1} Viking International Resources Company, Inc., Appellant herein, appeals the trial court's summary judgment decision in favor of Appellees, Jack Harding, et al., determining that the assignments of three oil and gas leases purportedly held by Appellant were void. On appeal, Appellant contends that 1) the trial court erred in denying its motion for summary judgment; and 2) the trial court erred in partially granting Appellees' motion for summary judgment. In light of our determination that

the leases were assigned to Appellant in violation of the anti-assignment clauses contained in the oil and gas leases executed as between the original lessors, Appellees' predecessors, and the original lessee, Carlton Oil Corporation, we conclude there exists no genuine issue of material fact precluding judgment, as a matter of law, in favor of Appellees. Thus, Appellant's assignments of error, both of which deal with the trial court's grant of summary judgment, are overruled. Accordingly, the decision of the trial court is affirmed.

## FACTS

{¶ 2} Appellees, Jack and Ryan Harding, own several tracts of real property that are subject to three oil and gas leases. Each of the original leases was signed by Henry and Zelda Fry, as lessors, and Carlton Oil Corporation, as lessee. Henry and Zelda Fry are the parents of Appellees, who are successors in interest to the Frys. All three of the leases contained an anti-assignment clause, which provided as follows:

> "The rights of the Lessor may be assigned in whole or in part
> and shall be binding upon their heirs, executors and assigns.
> The rights and responsibilities of the Lessee may not be
> assigned without the mutual agreement of the parties in
> writing."

**{¶ 3}** A review of the record indicates that Carlton Oil Corporation (hereinafter "Carlton") was the lessee until 2011, when it purported to assign all of its interests in the leases to Appellant, Viking International Resources Company, Inc. (hereinafter "Viking"). These purported assignments were made in writing and were executed and recorded as between Carlton and Viking; however, Appellees were not parties to the assignments and the record indicates that they did not provide written consent for the assignments.

**{¶ 4}** Despite the fact that they did not provide written consent to the assignments, the record indicates that Appellees did, upon request of Appellant, complete and return a W-9 form that Appellant mailed to them in August of 2011, in order that they could begin receiving royalty payments from Viking. The record also indicates that Appellees accepted and cashed royalty checks from Viking for eight months until they finally objected to the assignments, by letter in May of 2012. Appellees followed with the filing of a complaint on August 1, 2012.

**{¶ 5}** Appellees alleged in their complaint that Carlton, who was not named as a defendant in the lawsuit, assigned the leases to Appellant in violation of the anti-assignment clause. Appellees

requested that the court declare the leases to be invalid, forfeited and void. Appellant responded by filing its answer on September 3, 2012, asserting several affirmative defenses, including waiver, estoppel and ratification. Appellant also filed a counterclaim seeking that the court quiet title in its favor and declare the leases to be valid, in full force and effect, and that Appellant owns the lessee's interest in the leases.

{¶ 6} Subsequently, both Appellant and Appellee filed motions for summary judgment. All motions were supported with the deposition testimony of Jack Harding, as well as Tom Palmer, on behalf of Viking. After considering the motions, the trial court denied Appellant's motion for summary judgment, but granted partial summary judgment in favor of Appellees. Specifically, the trial court determined that the assignments were made without the written consent of Appellees, which was expressly required in the leases. As such, the trial court held that the assignments were void. The trial court refused, however, to invalidate the original lease agreements, holding instead that the leases remained in effect and that Carlton was the lessee.

{¶ 7} It is from this order that Appellant now brings its timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED IN DENYING DEFENDANT'S-APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

II.     THE TRIAL COURT ERRED IN PARTIALLY GRANTING PLAINTIFFS'-APPELLEES' FIRST MOTION FOR SUMMARY JUDGMENT."

SUMMARY JUDGMENT STANDARD

{¶ 8}  Both of the assignments of error raised by Appellant deal with the trial court's grant and denial of competing motions for summary judgment.  As such, we will address them in conjunction with one another. Appellate courts review trial court summary judgment decisions de novo. *Grafton v. Ohio Edison Co.*, et al., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. See *Brown v. Scioto Cty. Bd. of Commrs*., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993); *Morehead v. Conley*, 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786 (4th Dist.1991). Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law.

{¶ 9}  Civ.R. 56(C) provides: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written

admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 10} Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall*, 77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164 (1997).

LEGAL ANALYSIS

{¶ 11} With respect to oil and gas leases, the Supreme Court of Ohio stated in *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897) as follows: "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Moore v. Adams*, 5th Dist. Tuscarawas No. 2007AP090066, 2008-Ohio-5953, ¶ 21 (internal citations omitted); *Maverick Oil & Gas, Inc. v. Barberton City School Dist. Bd. of Edn,* 171 Ohio App.3d 605, 872 N.E.2d 322, ¶ 12 (9th Dist.2007) (citing *Harris v. Ohio Oil Co.*, supra, for the proposition that "[a]n oil and gas lease is governed by contract law."); See also, 68 Ohio Jur.3d Mines and Minerals §23("[i]n determining the rights and duties of the parties to a mineral lease, the basic rules governing the construction of contracts apply as do the substantive rules.").

{¶ 12} The construction of written contracts and instruments of conveyance is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of syllabus (1978), superceded by statute on other grounds. Common words appearing in a written instrument

will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. *Id*. at paragraph two of the syllabus. Words and phrases used must be given their natural and commonly accepted meaning, where they possess such meaning, to the end that a reasonable interpretation of the contract consistent with the apparent object and plain intent of the parties may be determined. *Gomolka v. State Auto. Mutl. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982).

{¶ 13} "Unless prohibited by some statutory provision or by the terms of the mining lease itself, the lessee may sublease [footnote omitted] or assign the leasehold or a part of it."  68 Ohio Jur.3d Mines and Minerals § 59.  The Northern District of Ohio recently discussed the rules regarding assignments in *Ohio Environmental Development Limited Partnership v. Envirotest Systems Corp.*, 478 F.Supp.2d 963, 979, (N.D. Ohio 2007), as follows:

"The Supreme Court of Ohio recently noted:

It is long-standing tradition in the common law that all contract rights may be assigned except under three conditions. First, *if there is clear contractual language prohibiting assignment, an assignment will not be enforced.* Second, an assignment must

not materially change the duty of the obligor, materially increase the insurer's burden or risk under the contract, materially impair the insurer's chance of securing a return on performance, or materially reduce the contract's value. Third, the assignment will not be valid if it is forbidden by statute or by public policy. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 488, 861 N.E.2d 121 (internal citations omitted)" (Emphasis added).

The court further noted as follows:

"[T]he rules of interpretation governing anti-assignment provisions 'do not override express statements of the will of the parties. If the contract shows an intent by the parties to limit both delegations of duties and assignment of rights, and specifically states who is bound by the assignment prohibition, then the interpretive default rules are inapplicable.' *Riley v. Hewlett–Packard Co.*, 36 Fed.Appx. 194, 196 (6th Cir.2002). See also 9 Arthur L. Corbin, Corbin on Contracts Supp. § 872 (1951) ('such rules do not override the express intention of parties to limit both the delegation of duties and the assignment of rights')." Id.

**{¶ 14}** Here, the original oil and gas leases at issue contained an anti-assignment clause which read as follows:

"The rights of the Lessor may be assigned in whole or in part
and shall be binding upon their heirs, executors and assigns.
The rights and responsibilities of the Lessee may not be
assigned without the mutual agreement of the parties in
writing."

The State of Ohio enforces anti-assignment clauses where there is clear contractual language prohibiting an assignment. *J.G. Wentworth, LLC v. Otisha Christian, et al.*, 7th Dist. Mahoning No. 07MA113, 2008-Ohio-3089, ¶ 40.

**{¶ 15}** Appellant contends that the trial court erred in denying its motion for summary judgment and in granting partial summary judgment in favor of Appellees. A review of the record reveals that the trial court granted summary judgment in favor of Appellees on the issue of the validity of the assignments of three oil and gas leases purportedly held by Appellant, specifically holding the assignments of the leases to be void because the assignments were made in violation of the anti-assignment provisions contained in the oil and gas leases as between the original lessors and lessee. However, although the trial court found that the assignments were void, it

refused to terminate the oil and gas leases as between Appellees and Carlton Oil Corporation, holding that Carlton, rather than Appellant, would remain the lessee on the leases.

{¶ 16} A review of the record also indicates that Appellant's motion for summary judgment was denied by the trial court. Appellant's motion for summary judgment sought an order by the trial court quieting title in their favor, by declaring that the leases at issue were valid, in full force and effect, that Appellant owned lessee, Carlton's, interest in the leases, and that the anti-assignment provisions contained in the leases were void as an impermissible restraint on alienation. In support of its motion for summary judgment, Appellant also argued that even assuming the leases had been breached by failing to obtain Appellees' consent to the assignment of the leases, Appellees had ratified the assignments by their conduct and were therefore estopped from denying the validity of the assignments. Appellant further argued that Appellees had waived any breach associated with the assignment of the leases without their consent.

{¶ 17} More specifically, Appellant argues that Appellees are estopped from denying the validity of the assignments of the oil and gas leases from Carlton to Appellant because of several affirmative actions taken after they had knowledge of the assignments. For instance, and as

mentioned above, Appellees executed and returned a W-9 form that was mailed to them by Viking, in order that royalty payments from the production of oil and gas from the wells located on Appellees' property could be provided to them. Further, Appellees accepted and cashed monthly royalty checks for approximately eight months before objecting to the assignments.

{¶ 18} Appellant cites several cases in support of their argument that Appellees have either ratified the assignments and/or waived any breach associated with the assignments and are therefore estopped from challenging them now.[1] This court has also located several cases from Ohio and other states, as well as federal cases which stand for the proposition that the acceptance of either delay rental or royalty payments, or any other benefit, for instance "free gas", may result in a landowner being estopped from asserting a breach of either an express or implied covenant contained in an oil and gas lease.[2] However, we find these cases to be factually

---

[1] *Quadrant Exploration, Inc. v. Estate of William E. Greenwood, et al.*, 4th Dist. Washington No. 82X29, 1983 WL3260 (Aug. 15, 1983) (acceptance and retention of benefits under lease results in party being estopped to assert invalidity of lease); *Litton v. Geisler, et al.*, 80 Ohio App. 491, 76 N.E.2d 741 (4th Dist. 1945) (noting it is "rather universally held that acceptance of rents or royalties under an oil and gas lease * * * is a waiver of forfeiture for breach of any covenant or condition for which such rents or royalties are paid.").

[2] There are just as many cases, however, that hold that acceptance of a benefit that a lessor is entitled to, such as royalty payments from the production of minerals from the lessor's property, does not result in a landowner being estopped from asserting breach under a lease. See, *Bonner Farms, Ltd. V. Thomas A. Fritz, Deborah D. Weise, and Exco-North Coast Energy, Inc.*, 355 Fed. Appx. 10, (6th Cir. 2009) (holding estoppel inapplicable where even where landowner cashed royalty checks, based in part upon fact that landowners were had a claim to the payments in absence of the lease); *Stitzlein v. Willey and Columbia Gas*

distinguishable from the case presently before us, in that those cases seem to deal with an attempt to forfeit a lease or declare a lease to have expired by its own terms for either nonproduction of oil and gas, or failure to drill a certain number of wells within a certain amount of time.

{¶ 19} In our opinion, different principles are at play in the present case and thus, those cases are not controlling. The question presently before us is whether the assignments of three oil and gas leases from Carlton to Appellant are valid considering that the original leases between Carlton, as lessee, and Appellees, as lessors, contained an anti-assignment clause which prohibited the assignment of the leases by the lessee without the lessors' consent. The trial court determined that the anti-assignment clause in the oil and gas leases clearly prohibited assignments without Appellees' written consent and that the uncontroverted evidence established that the leases were assigned without the written consent of Appellees.[3] In reaching this decision, the trial court did not address the equitable arguments made by Appellant regarding ratification, estoppel and waiver.

{¶ 20} We find this approach to be correct considering the facts of this case, which involves an attempt to invalidate an assignment, rather than

_____

*Transmission Corporation*, 5th Dist. Holmes No. CA-318, 1979 WL 209691 (holding estoppel inapplicable because landowners were entitled to royalties regardless of lease).

[3] In reaching this decision, however, the trial court refused to terminate the original gas and oil leases as between Appellees and Carlton, holding that the original leases would remain in effect and that Carlton Oil Company would remain the lessee of those leases. Appellees do not raise any argument related to this finding on appeal and thus, we will not address it.

an attempt to declare a forfeiture, or assert a breach or the expiration of an original oil and gas lease.  The fact is, the dispute here involves a written contract which clearly specified the rights and duties of the parties with respect to the issue of assignment.  As set forth above, Ohio enforces anti-assignment clauses where there is clear contractual language prohibiting an assignment.  *J.G. Wentworth, LLC*, supra.  Thus, we conclude that the clear and unambiguous anti-assignment clauses contained in the original oil and gas leases should be enforced.

{¶ 21}  Based upon the foregoing, we conclude that summary judgment in favor of Appellant was properly denied, and that partial summary judgment in favor of Appellees was properly granted on this issue.  Accordingly, both assignments of error raised by Appellant are overruled and the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**