[Cite as *Price v. K.A. Brown Oil and Gas, L.L.C.*, 2014-Ohio-2298.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| TIMOTHY R. PRICE, et al. | ) | CASE NO. 13 MO 13 |
| | ) | |
| PLAINTIFFS-APPELLEES | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| K.A. BROWN OIL AND GAS, LLC, et al. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
                               Pleas of Monroe County, Ohio
                               Case No. 2012-265

JUDGMENT:                      Affirmed.

APPEARANCES:

For Plaintiffs-Appellees:      Atty. Matthew W. Warnock
                               Atty. Daniel C. Gibson
                               Atty. Daniel E. Gerken
                               Bricker & Eckler LLP
                               100 South Third Street
                               Columbus, Ohio 43215-4291

For Defendants-Appellants:     Atty. Craig E. Sweeney
                               Atty. Richard A. Yoss
                               Yoss Law Office
                               122 N. Main Street
                               Woodsfield, Ohio  43793

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                               Dated:  May 27, 2014

WAITE, J.

{¶1} Appellant K.A. Brown Oil & Gas, LLC, appeals the summary judgment of the Monroe County Court of Common Pleas declaring that a 1988 oil and gas lease had terminated. The purpose of the lease was to develop two wells that had been drilled pursuant to an earlier lease. The new lease did not require additional drilling, and required only that the two previous wells become productive. After many years of receiving no royalties, Appellees Timothy R. and Rhonda Price filed a declaratory judgment action to have the lease terminated. The trial court determined that paragraph 14 of the lease required both wells on the property to be productive by November 1989 or the lease automatically terminated. The second well was not put into production until 1995, and for this reason the court declared the lease had terminated.

{¶2} Appellant contends that Appellees ratified the lease by accepting royalty payments and free gas. Appellant's argument is not persuasive. The doctrine of ratification deals with the binding effect of certain unauthorized contracts on a corporation and is inapplicable in this case because Appellees are not a corporate entity. Appellant also argues that any breach of the lease was waived when Appellees accepted royalty payments. The only records of any royalty payments were five *de minimus* checks from 2004-2005 totaling less than $69. We have previously held that acceptance of *de minimus* royalty payments does not waive termination rights in an oil and gas lease. Finally, Appellant argues that Appellees waived their termination rights by accepting free gas from the wells. The lease provided that Appellees could have a specified amount of free gas, and the remedy provided in the lease for any overage was that Appellees would have to pay for the

excess, not the loss of the right to terminate the lease. Additionally, there is no evidence that they took more gas than was allowed by the lease. The trial court judgment is correct and is hereby affirmed.

<u>History</u>

**{¶3}** In 1979, Willard and Eleanor Maienknecht owned 65.441 acres located in Jackson Township, Monroe County, Ohio. On March 15, 1979, they leased the property to Pan American Exploration for purposes of oil and gas drilling. In 1981, two wells were drilled on the property (Well #1 and Well #2). Neither well produced any oil or gas, and the lease was subsequently released in the fall of 1988 by KDA, Inc., the successor in interest to Pan American Exploration.

**{¶4}** In November 1988, the Maienknechts entered into a second oil and gas lease for the same acreage that was the subject of the 1979 lease. The new lessee was Greg Cappadona, d/b/a Austin Enterprises. The lease had a six-month primary term. (11/1/88 Lease, ¶4.) The secondary term of the lease continued "as long thereafter as said premises are operated by lessee in the search for or production of oil or gas in paying quantities or as long as this lease is extended by any other provision hereof." (11/1/88 Lease, ¶4.)

**{¶5}** Paragraph 14 of the lease stated that "<u>[t]he purpose of this lease is so that the Lessee may put the existing wells into production</u>." (Emphasis sic.) (11/1/88 Lease, ¶14.) The lessee was required to put the first well into production within six months, and the second well into production within the following six months. (11/1/88 Lease, ¶14.) The lease stated that "<u>[i]f this schedule is not adhered to, then the Lessee shall release said lease back to Lessor or begin paying shut-in royalties</u>." (Emphasis sic.) (11/1/88 Lease, ¶14.) The lease also allowed Appellees to take

200,000 cubic feet of free gas for domestic use, at their sole risk and expense. Any additional amount used must be paid for at a fair domestic rate. (11/1/88 Lease, ¶11.) The first well was put into production in the spring of 1988, but the second well was not put into production until 1995. There is no evidence that shut-in royalties were ever paid.

{¶6} In January of 1989, Cappadona assigned 50% of his interest in Well #1 to Appellant. In August of 2003, Cappadona assigned his remaining interest in the lease to Appellant. In 2010, Cappadona again assigned all his remaining interest in the lease to Appellant.

{¶7} On January 11, 1999, Appellees acquired the Maienknechts' real property located in Monroe County and became the lessors of the 1988 lease.

{¶8} On February 29, 2012, Appellees recorded an "Affidavit of Facts Relating to Title" pursuant to R.C. 5301.252 in the Monroe County Recorder's Office.

{¶9} On August 26, 2012, Appellees filed a declaratory judgment action in the Monroe County Court of Common Pleas. The complaint requested a declaration that the lease had terminated due to expiration of the primary term, the nonproduction of the two wells, and the failure of the lessee to pay production or shut-in royalties. Appellees presented evidence that the second well was not put into production until 1995, that no production royalties had been paid except for five *de minimus* checks in 2004 and 2005 totaling $68.59, that no shut-in royalties had been paid, and that neither Appellant nor the prior lessees reported any production to the Ohio Department of Natural Resources until 2008. Appellant responded by introducing production records from 2003-2011. Appellant also cited to a deposition of Mr. Price in which he stated that he had no personal knowledge of events at the

well from 1988 to 1999, and that he had used some gas for personal use. Appellant argued that Appellees had ratified the lease by their acceptance of royalties, by taking gas for personal use, and by failing to take affirmative action to terminate the lease in a timely manner. The trial court granted summary judgment to Appellees on the grounds that the lease required both wells to be put into operation by November 1, 1989. If both wells were not put into production by that date, the lease terminated and the lessee was required to release the lease back to the lessor. The court held that paragraph 14 of the lease did not require any affirmative action by the lessor to terminate the lease. The court filed its judgment entry on July 8, 2013 and this timely appeal followed.

## ASSIGNMENT OF ERROR

The Trial Court erred in granting summary judgment based only on the finding that the subject oil and gas lease terminated as a matter of law on November 1, 1989.

{¶10} This appeal involves a challenge to the decision to grant summary judgment in a matter involving the interpretation of an oil and gas lease. An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court, set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E. 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most

favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364, N.E.2d 267 (1977). When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. *Id.*

{¶11} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

{¶12} The parties agree that the 1988 lease governs the dispute in this appeal.

{¶13} Appellant presents one argument on appeal, and this was the only argument made in opposition to summary judgment at the trial court level. Appellant argues that Appellees ratified the 1988 lease by implication due to certain actions on their part. Appellant contends that, due to the ratification of the lease, Appellees cannot now deny that it is still valid.

**{¶14}** The doctrine of ratification does not apply in this case. This doctrine refers to actions taken by a corporation to validate an unauthorized contract. It is a basic rule of corporate law that a contract is not authorized by the corporation unless it is executed or authorized by the board of directors. *Kimball v. Kimball Bros.*, 143 Ohio St. 500, 506, 56 N.E.2d 60 (1944). Ratification refers to whether a corporation can be bound by an unauthorized contract due to the acts of its agents. *Campbell v. Hospitality Motor Inns, Inc.*, 24 Ohio St.3d 54, 55, 493 N.E.2d 239 (1986). Implied ratification occurs when a corporation is held to the terms of an unauthorized contract even though there was no express action by the board of directors or the officers of the corporation to ratify the contract. *Id.* at 57.

**{¶15}** Appellees are not a corporate entity. The *Campbell* case is the primary case cited by Appellant, and it clearly and unmistakably deals with matters of corporate law. The dispute in *Campbell* was whether Harley Hotels, Inc., an Ohio corporation, was bound by an employment agreement not expressly authorized by the board of directors. The word "corporation" appears in every holding and every part of the analysis of the case, over 35 times. "The question presented is whether the appellee corporation may be bound on a contract neither expressly authorized nor expressly ratified by its board of directors." *Id.* at 55. "Directors and officers are agents of the corporation and can bind their principal, the corporation, by their acts." *Id.* "[A] corporation * * * may become bound by acquiescing in and ratifying an unauthorized act done on its behalf by its agent." *Id.* "Ratification of an unauthorized contract by the directors of a corporation need not be express; it may also be implied by the board's conduct." *Id.* at 57.

{¶16} In this appeal, there is no dispute between the parties about an unauthorized contract. Both parties agree that there was a valid lease executed and recorded in 1988. They are each seeking to enforce the terms of that lease, particularly paragraph 14 of the lease. Appellees agree that paragraph 14 is valid. They contend that the lease has terminated by its own terms due to the operation of paragraph 14. The doctrine of ratification has no relevance at all to the complaint, the motion for summary judgment, the trial court's judgment, or to this appeal.

{¶17} Appellant makes some reference to theories of waiver and estoppel in its argument on appeal. These issues were not raised to the trial court in summary judgment, and we need not consider them on appeal. As we have stated in another recent oil and gas case, "[Appellant] also argues that the doctrine of waiver by estoppel precludes Appellees from requiring strict compliance with the change in ownership clause. Appellees correctly counter that this argument was never raised in the trial court. As this court has explained concerning summary judgment appeals '[e]ven though this is a de novo review of a summary judgment decision, there is no "second chance to raise arguments" that should have been raised before the trial court.' *Am. Express Centurian Bank v. Banaie*, 7th Dist. No. 10 MA 9, 2010-Ohio-6503, ¶24. Thus, we will not consider this argument." *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. No. 12 CO 18, 2013-Ohio-2874, ¶25.

{¶18} Appellant did mention waiver and estoppel in its answer to the complaint, and it appears that there may be some confusion in a few oil and gas cases between the idea of ratifying a lease and waiver of terms in the lease. For these reasons, we will briefly address these issues. Before reviewing whether a provision in an oil and gas lease has been waived, we look to the basic nature of a

lease. An oil and gas lease is a contract, and general contract law applies to the interpretation of leases: "The rights and remedies of the parties to an oil or gas lease, must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms, must govern the rights and remedies of the parties." *Harris v. The Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897).

{¶19} There does not seem to be any dispute that Well #1 was put into at least nominal production during the six-month primary term. There is also no dispute that Well #2 was not put into production prior to 1995. The question here regards the legal significance of these facts.

{¶20} Paragraph 4 of the lease required production in paying quantities within six months in order for the lessee to continue holding the lease. The lease could also be held if allowed by other provisions in the lease. Paragraph 14 stated that the purpose of the lease was not to drill new wells, but to put the existing wells into production. Paragraph 14 required the lessee to put both wells into production by November 1, 1989. If not, the lessee had one of two options at its disposal: release the lease or pay shut-in royalties. There is no evidence that shut-in royalties were ever paid. There is some evidence that Well #2 was eventually put into production, but the earliest date of production is in 1995. There is no evidence that either well produced in paying quantities prior to 1995. Appellees presented evidence that there was never any oil produced, and that no gas was produced from 1993 to 2008 from either well. (3/29/13 MSJ, Exh. 12, Ohio Well Completion Reports.) Appellees also

presented evidence of nonproduction by establishing that no gas royalties had been paid, with the exception of five checks issued in 2004-2005 totaling $68.59.

**{¶21}** Appellant presented some evidence of production starting in 2003, but provided no evidence of production in paying quantities or any other activity in search of oil and gas before 2003, other than some vague references that Well #1 came online in 1989 and some records of production from Well #2 in 1995.

**{¶22}** Appellant seems to believe that the lease should not have been declared terminated because the requirement to get the second well into production was not part of the habendum clause and was not required to be completed within the primary term of the lease. But whether the requirement to put the second well into production was a requirement of the primary term or the secondary term of the lease is not a relevant issue in this appeal. The second well was not put into production until 1995, six years after the specific deadline stated in the lease expired. Since the lease required both wells to be put into production or terminate on or before November 1, 1989, and the only evidence in the record proved that there was no production from the second well until at least 1995, it is clear the lease was at an end unless there is some other lease provision or legal theory that would prevent termination.

**{¶23}** Appellant argues that acceptance of *de minimus* royalty checks by Appellees in 2003-2004 constituted a failure to repudiate the lease, thus defeating their claim that the lease expired. The record contains photocopies of five royalty checks issued from K.A. Brown Oil & Gas to Tim Price. We note that it was Appellees who provided these checks to the trial court in support of their motion for summary judgment, not Appellant. The checks were provided to demonstrate that

over the entire course of the lease, only these minimal royalties had been paid. Check 13 is dated 4/12/04 and is in the amount of $11.76. Check 39 is dated 8/9/04 and is for $24.48. Check 52 is dated 11/10/04, for $1.78. Check 72 is dated 2/1/05 and is for $13.77. Check 113 is dated 5/4/05 and amounts to $16.80. The total of these five checks is $68.59. (3/29/13 MSJ, Exh. 8, sub-exhibit E.) Another attachment to the same exhibit shows that no royalties were paid between 2007 and 2012. Appellant filed an answer to an interrogatory admitting that it paid no royalties for the two wells from 2006 through 2011. Thus, the record reveals that $68.59 is the total amount of royalties paid by Appellant to Appellees.

{¶24} Appellant cites *Litton v. Geisler*, 80 Ohio App. 491, 76 N.E.2d 741 (4th Dist.1945), in support of its theory that Appellees' acceptance of these royalty checks waived their right to terminate the lease. *Litton* held that: "An oil and gas lease for a period of ten years and 'so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon' is producing in paying quantities, within the terms of the lease, where all parties to the lease are satisfied to let the well stand until such time as a market can be obtained and where, during the interval, the lessors are furnished, in lieu of an annual rent of $300 stipulated for in the lease, sufficient gas to light and heat certain additional residences over and above the one residence provided for in the lease." *Id.* at syllabus. *Litton* is completely irrelevant to the matter at bar, because the lease being interpreted was entirely different. The parties in *Litton* had agreed that the lessee would pay $300 rent per year in lieu of actual production during the secondary term of the lease. The lessee paid its rent on time. The lessor later sued on theory that the wells were not producing in paying quantities, even though it had been accepting the rent checks in lieu of production.

Since the rent had been agreed to by both parties and was paid on time, there was no cause of action to terminate the lease based on whether the wells were producing.

**{¶25}** Regardless, the Fourth District Court of Appeals has recently stepped away from its holding in *Litton*. *Harding v. Viking Internatl. Resources Co., Inc.*, 2013-Ohio-5236, 1 N.E.3d 872 (4th Dist.). In *Harding* the court noted that: "There are just as many cases, however, that hold that acceptance of a benefit that a lessor is entitled to, such as royalty payments from the production of minerals from the lessor's property, does not result in a landowner being estopped from asserting breach under a lease." *Id.* at ¶18, fn.2.

**{¶26}** There is only one case from this Court interpreting *Litton*. *Gedco Oil & Gas Joint Venture v. Earley*, 7th Dist. No. 631, 1988 WL 56488. In *Gedco*, we rejected the application of *Litton* where the lease specified a date certain for a well to be put into production in paying quantities, and where the lessor accepted a *de minimus* royalty check for $7.70. In *Gedco*, there was a lease signed in 1978. A well was drilled but there was little production. Only one royalty check (from June 1980 for the sale of 73 barrels of oil) had been paid during the course of the lease. In May of 1985 the parties signed a supplemental agreement in an attempt to preserve the 1978 lease. The supplement required the lessee to begin production in paying quantities by July 15, 1985. There was no evidence that the well was put into production by that date, and the only royalty paid on the supplemental agreement was $7.70, in February of 1986. The trial court held that the lease terminated due to the failure to put the well into production by July 15, 1985. We agreed and affirmed the trial court's judgment.

**{¶27}** In *Gedco,* we held that *Litton* did not apply: "There is a factual difference between the *Litton* case and the present case. In the *Litton* case the court found that all parties to the lease had let the well in question stand 'until such time as a market can be obtained.' In the case at hand there was no such an agreement but rather, to the contrary, there was the supplemental agreement which, very specifically, set a deadline as to production. This deadline date was in no way ambiguous and was binding upon the appellant." *Gedco Oil & Gas Joint Venture v. Earley*, 7th Dist. No. 631, 1988 WL 56488, at *2.

**{¶28}** The matter before us bears more similarity to *Gedco* than *Litton*, because in the instant appeal there was no agreement to forgo royalties until a market could be found, and there was a clear deadline set forth in the lease for production in paying quantities from both wells. In fact, *Gedco* is almost identical to the instant appeal, due to the presence of an earlier lease in which a nonproductive well was drilled, and then the creation of a subsequent agreement requiring the existing well to begin producing by a date certain. Both cases also involve a *de minimus* royalty check that was cashed after the production date had already expired. Therefore, even accepting as true that over the 24-year course of Appellee's 1988 lease Appellant paid $68.59 in royalties, this does not prevent the lease from being declared terminated due to nonproduction of Well #2 by November 1, 1989, shown by the lack of production records from 1988-2003. It is also clear that Appellees are not seeking to terminate the lease simply because of nonpayment of royalties, nor are they asking for back royalties. The failure to pay royalties simply constitutes evidence of lack of production in paying quantities. Appellees' claim that the lease

automatically terminated due to lack of production in paying quantities, particularly in Well #2. There is no evidence in this record to contradict their assertions.

**{¶29}** Appellant contends that Appellees' argument here fails because Appellee Timothy Price stated in a deposition that he had no personal knowledge of the workings of either well between 1988 and the time he first acquired an interest in the wells in 1999. (2/20/13 T. Price Depo., p. 7, attachment to Memorandum Contra Plaintiffs' Motion for Summary Judgment.) Appellant fails to recognize that Appellees do not rely on their personal knowledge to prove Well #2 did not produce in paying quantities by the date set in the lease. Instead, they relied on extrinsic proof that the well failed to produce between 1979 and 1988, a fact that no one disputes. They relied on Greg Cappadona's response to an interrogatory, in which he stated that Well #2 did not go into production until 1995, as proof. (3/29/13 MSJ, Exh. 11, Interrogatory 36.) They relied on Ohio Well Completion Reports that showed no production at all between 1993 and 2004. Guy Brown's own affidavit in opposition to summary judgment states that K.A. Brown Oil & Gas operated the wells since 1988 and did not submit production reports to the Ohio Department of Natural Resources until 2008. Appellees also proved nonproduction by the fact that they never received royalty checks from the wells, except for five *de minimus* checks sent after the termination date from 2004 and 2005, totaling $68.59.

**{¶30}** Appellant argues that Appellees could not rely on circumstantial evidence to prove their case and may only rely on direct personal knowledge. Appellant is mistaken that Appellees are only entitled to rely on their own personal knowledge to support summary judgment. "Circumstantial evidence is not inherently less reliable or certain than direct evidence." *Fogle v. Cessna Aircraft Co.*, 10th Dist.

No. 90AP-977, 1992 WL 10272 (Jan. 16, 1992). Both circumstantial and direct evidence are sufficient to support a verdict, and, in some cases, circumstantial evidence may be more persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 11, 5 L.Ed.2d 20 (1960).

{¶31} Finally, Appellant believes that Appellees waived the right to enforce the termination clause because they accepted free gas in excess of the terms of the lease. Appellant contends that the lease only allowed Appellees to receive gas for one building, and that Appellees had piped gas to three buildings. We can find no reference to evidence in the record discussing usage of gas in three buildings. Even assuming that this is a true statement of fact, paragraph 11 allows for 200,000 cubic feet of free gas per year and there is no evidence that Appellees exceeded that amount. In fact, there was no meter at either of the wells. The nearest meter was located on property not owned by Appellees and it included gas produced from a third well. More to the point, the remedy provided in paragraph 11 for excess usage of free gas is that Appellees were to pay a fair domestic gas rate for the excess. There is nothing in the lease stating that excess usage of free gas under paragraph 11 constitutes a waiver of Appellees' rights under paragraph 14.

{¶32} Appellant's argument regarding ratification is inapplicable to this appeal, other arguments have been waived, and any theories of waiver or estoppel are not supported by the record. Appellant's sole assignment of error is overruled.

### Conclusion

{¶33} The trial court declared that a 1988 oil and gas lease had terminated due to failure of the lessee to abide by a provision in the lease requiring two wells on the property to be put into production in paying quantities by November 1, 1989. It is

undisputed that the second well was not put into production until 1995. Appellant argues that Appellees ratified the lease, waived its termination provisions, and should be estopped from terminating the lease because they accepted royalty payments, took excess free gas, and failed to take affirmative action to terminate the lease prior to 2012. The doctrine of ratification relates to corporations and does not apply in this case because the lessor is not a corporation. Appellant's reliance on concepts of waiver and estoppel also do not apply to this appeal. Although Appellees accepted $68.59 in royalties, this does not equate to waiver of an express and automatic termination clause in the lease. The lease did contain a clause discussing free gas use by Appellees and there is no evidence that Appellees violated the clause. The judgment of the trial court is correct and is affirmed.

Donofrio, J., concurs.

DeGenaro, P.J., concurs in judgment only.